# Mayor and Aldermen of Birmingham *v*. McCary.

*Action against Municipal Corporation for Injury resulting from defective Sidewalk.*

1. *Liability for injuries, as between contractor and employer.*—The general rule is, that where there is an independent contractor—or one who reserves the general control over the work. with the right to direct what shall be done, and the manner of doing it—the *quasi* employer, or contractee, is not liable for an injury resulting from the negligence of such contractor, or of his servants, collateral to the work contracted to be done, such work not being a nuisance *per se*. In all such cases, the rule of *respondeat superior* applies.

2. *Same; exception in case of dangerous work.*—An exception to this general rule is, that where the work contracted to be done, however carefully and skillfully performed, is necessarily and intrinsically dangerous, the employer is liable, equally with the contractor, for injuries resulting directly and necessarily from the acts authorized to be done.; but this exception does not extend to injuries which are not a necessary

[Mayor and Aldermen of Birmingham v. McCary.]

result of the work, but are caused by the negligent act of the contractor or his servants; for these the contractor alone is liable.

3. *Same; exception where employer is under legal duty to secure safety; municipal corporation; work on streets; notice of defect.*—Another exception to the general rule is, where the law imposes on the employer the duty to keep the subject of the work in a safe condition; as in the case of a municipal corporation, authorized and required to keep the streets and sidewalks in a safe condition for passage by day and by night; in which case, the employer, or corporation, is liable for injuries resulting from an obstruction or defect caused in the performance of the work, and left exposed by night, although the work was done by an independent contractor; and notice of such obstruction or defect is imputed by law to such employer.

4. *Contributory negligence as question of law or fact.*—Where the evidence is indeterminate, being such that different persons might reasonably draw different conclusions from it, the question of contributory negligence *vel non* is properly submitted to the determination of the jury.

APPEAL from Birmingham City Court.

Tried before Hon. H. A. SHARPE.

Appellee, McCary, brought suit against the Mayor and Aldermen of Birmingham to recover damages for injuries sustained by reason of a ditch across one of the streets, including the sidewalks, of said city of Birmingham being left open without proper lights, or other warning of danger, and into which plaintiff fell the night of November 25, 1885, and broke his arm. The several defenses to the action appear in the opinion. The contributory negligence charged on plaintiff was that he did know, or ought to have known, of the existence of the ditch, and consequently to have been looking out for the same at the time of his fall, he having passed along the street, on the opposite sidewalk, the afternoon of the said 25th of November, and having had to step over the same ditch on the opposite side. The ditch or excavation had been opened the afternoon of the day the injury was received. The merits and demerits respectively of the charges given and refused are set out in the opinion, and it is not considered necessary to here give said several charges *in hœc verba.*

WEBB & TILLMAN, for appellant, cited 103 Penn. St. 32; 39 Conn. 587; 63 Cal. 269; 57 Verm. 252; 4 Wall. 679; 27 Am. Rep. note, 647, 650; Cen. Law Journal, vol. 23, note, 108–109; 2 Black, 418; *Hexanner v. Webb*, N. Y. Ct. App. Sept., 1886. On question of notice to city, *Mayor v. Sheffield*, 4 Wall. 189. On question of plaintiff's contributory negligence, 81 Ala. 234.

MOUNTJOY & TOMLINSON, and SMITH & LOWE, *contra.*—The city is liable for Stonestreet's failure to close the sewer, or provide lights or warning of danger.—5 Ohio St. 38; 103 Mass. 194; 61 Ill. 431; 59 Me. 520; 122 Mass. 481; 2 Dill. Munic. Corp. (3d Ed.) §§ 1027, 1030, 1024, 1025; 70 Ind. 65; 41 Ohio St. 465; 38 Ohio St. 50; 19 W. Va. 323. Notice of the excavation to the city was unnecessary.—2 Dill. on Munic. Corp. (3d Ed.) §§ 1024, 1025.

SOMERVILLE, J.—The present action is based upon the alleged negligence of the corporate authorities of the city of Birmingham in allowing a ditch or excavation, made across a sidewalk, incident to the construction of a sewer, to remain open during the night time, without covering, guards or lights, in consequence of which the plaintiff fell in, and was injured by the breaking of his arm.

The main defense relied on by the city is, that the wrongful act complained of was the act of one Stonestreet, to whom the city had lawfully let the contract of constructing the sewers, and that under the terms of the contract Stonestreet was an independent contractor, and, as such, was alone liable to the plaintiff for the damages claimed, if any one was so liable. Contributory negligence on the part of the plaintiff, and want of notice of the defect or excavation in the street, were also relied on by the defendant.

The contract between the city and Stonestreet provided that the work was to be done according to certain plans and specifications, and under the supervision of the city engineer, so far as to make it his duty to inspect the laying of the sewer-pipes, and to accept and receive the work when completed; but neither the engineer nor other city officers had anything to do with the employment or direction of the hands, nor of superintending the work, while it was in progress, except that it was the engineer's duty to lay out the work, set the stakes fixing the depth the sewer-pipes were to be laid, and to see that they were laid at proper depth or grade.

The general rule is well settled, and not denied by appellee's counsel, that one person is not ordinarily liable for any injury produced by the negligence of another, unless the relation of master and servant exists between them; and that where such injury is done by an *independent contractor*—or one who reserves the general control over the work, with the right to direct what shall be done, and the manner of doing it—the *quasi* employer, or contractee, can not be held liable

for an injury resulting from the negligence of such contractor, or of his servants, and collaterally to the work contracted to be done, such work not being a nuisance *per se*. In all such cases, the rule of *respondeat superior* applies. Wood on Master & Servant (2d Ed.), p. 603, § 314 *et seq.*; p. 598, § 313; *Cuff v. Newark, &c., R. R. Co.*, 35 N. J. 17; s. c., 10 Amer. Rep. 205.

But there are two established classes of exceptions to which this general rule has no application. It does not apply: (1) Where the work contracted to be performed will, in its progress, however skillfully done, be necessarily or intrinsically dangerous; and (2) where the law imposes on the employer the duty to keep the subject of the work in a safe condition.

The first exception applies where the obstruction or defect which produced the injury results directly and necessarily from the acts which the contractor agreed and was authorized to do, the person authorizing and the person authorized each being equally liable to the injured party, the relation of principal and agent *pro hac vice* at least existing between them, notwithstanding the employment may in other respects be independent. "It would be monstrous," said Lord Campbell, in *Ellis v. Sheffield Gas Cons. Co.*, 2 Ellis & Bl. 767, "if the party causing another to do a thing were exempted from liability for that act merely because there was a contract between him and the person immediately causing the act to be done." The rule is said by Mr. Justice Clifford, in *Water Co. v. Ware*, 16 Wall. 566, to be based on common justice, that "if the contractor does the thing which he is employed to do, the employer is as responsible for the thing as if he had done it himself; but if the act which is the subject of complaint is purely collateral to the matter contracted to be done, and arises indirectly in the course of the performance of the work, the employer is not liable, because he never authorized the work [act] to be done."

It is observed by Mr. Dillon, in his work on Municipal Corporations, that while the principle of *respondeat superior* does not generally extend to cases of independent contracts, where the party for whom the contract is to be done is not the immediate superior of those guilty of the wrongful act, and has no choice in the selection of the workmen, and no control over the manner of doing the work, it is important to bear in mind that this general rule "does not apply where the contract directly requires the performance of a work in-

trinsically dangerous, however skillfully performed." "In such a case," he adds, "the party authorizing the work is justly regarded as the author of the mischief resulting from it, whether he does the work himself or lets it out by contract."—2 Dillon Munic. Corp. (3d Ed.), § 1029. A fair illustration of this principle is found in the case of *City of Joliet v. Harwood*, 86 Ill. 110; s. c., 29 Amer. Rep. 17, where a city, employing a contractor to construct a sewer, where the work necessarily involved the blasting of rock, was held liable for the damage resulting from a rock thrown by the blast against the plaintiff's house. The right of recovery was held not to rest on the charge of negligence by the contractor, who used all proper diligence in his work, but upon the fact that "the city caused work to be done which was intrinsically dangerous—the natural, though not the necessary consequence of which was the injury to plaintiff's property." So, in the case of *McCafferty v. Spuyten, &c., R. R. Co.*, 61 N. Y. 178, we have an example of the principle that there is no liability where the injury is collateral to the work done by an independent contractor, and not a necessary result of its execution. There a railroad company lawfully let the work of constructing its road to a contractor, who sub-let a part of the work to others. The employees of a sub-contractor, by negligently *over-charging* a blast of powder, caused rocks to be thrown against the plaintiff's premises, resulting in the damage complained of in the action. The railroad company was held not to be responsible. In cases of this kind it has been held that the injury is presumed to be a necessary incident of doing the work, unless the defendant shows that it resulted from some act of negligence on the part of the contractor, or his servants.—*Sabin v. Vt. Cen. R. R. Co.*, 25 Vt. 363. Mr. Wood, in his work on Master & Servant, thus formulates the principle: "When the work can not be done at all, in the ordinary modes of executing it, without producing injury and damage, the contractee is liable; but when the injury and damage results simply from the careless or improper mode of executing the work, and the contractee has been guilty of no negligence in selecting a contractor, there is no principle of law which casts upon the contractee the burden of responsibility; and," he adds, "a contrary doctrine would be disastrous in its consequences, and serve seriously to embarrass and retard the proper use and healthy development of property, and the growth of cities and towns."—Wood on Master & Serv., p. 609 *et seq.;* and p. 603, § 314 (2d Ed.).

Such is the rule governing the first class of excepted cases above enumerated, where the work contracted to be performed is intrinsically dangerous, or arises from the very nature of the improvement, which is said by Mr. Dillon to be applicable to work done by independent contractors, according to the later and better considered cases in this country. This doctrine he states to be that, "where the work contracted for *necessarily constitutes an obstruction or defect* in the street, of such a nature as to render it *unsafe or dangerous* for the purposes of public travel, unless properly guarded or protected, the employer (equally with the contractor) where the injury results *directly* from the acts which the contractor engaged to perform, is liable therefor to the injured party. But the employer is not liable where the obstruction or defect in the street causing the injury is wholly collateral to the contract-work, and entirely the result of the negligence or wrongful acts of the contractor, subcontractor, or his servants. In such a case, the immediate author of the injury is alone liable."—2 Dillon Mun. Corp. (3d Ed.), § 1030.

The rule, as thus carefully formulated by Judge Dillon, is fully supported by the adjudged cases, at least in the American courts, and seems to us to be the correct one. *Wilson v. City of Wheeling*, 19 W. Va. 323; s. c., 42 Amer. Rep. 780; *City of Erie v. Caulkins*, 27 Amer. Rep. 647, *note; Storrs v. City of Utica*, 17 N. Y. 104; s. c, 72 Amer. Dec. 437; and *note*, 441; *Sulzbacher v. Dickie*, 51 How. Prac. (N. Y.) 500.

The second class of excepted cases—or those where the law imposes on the employer the duty to keep the subject of the work in safe condition—especially include those municipal corporations, upon which the duty is imposed, directly or impliedly by statute, to keep their streets in a safe condition for the traveling public.

It is not denied that the charter of the city of Birmingham devolves upon it this obligation—impliedly at least, as a necessary result from the corporate powers given and the corporate duties imposed.—Acts 1880–81, 471; 480 *sec.* 20; *Albrittin v. Mayor, &c., Huntsville*, 60 Ala. 486; s. c., 31 Amer. Rep. 46; *City Council, &c., v. Wright*, 72 Ala. 411. This fact brings the case within the rule under consideration, which is quite distinct from the last rule above discussed by us. It depends on the principle that where the statute thus imposes a duty upon a corporation, its faithful

[Mayor and Aldermen of Birmingham v. McCary ]

discharge can not be evaded by any effort to cast this duty on another, by contract or otherwise. This the law will not permit, nor can liability for damages resulting from the neglect of such duty be avoided in any such way. "Therefore, according to the better view," says Mr. Dillon, "where a dangerous excavation is made and negligently left open (without proper lights, guards, or coverings) in a traveled street or sidewalk, by *a contractor under the corporation* for building a sewer or other improvements, *the corporation is liable* to a person injured thereby, although it may have had no immediate control over the workmen, and had even stipulated in the contract that proper precautions should be taken by the contractor for the protection of the public, and making him liable for accidents occasioned by his neglect." 2 Dillon Mun. Corp. (3d ed.) § 1027.

There is a general consensus of authority in support of this view, the leading case on the subject being that of *Storrs v. City of Utica,,* 17 N. Y. 104; s. c. 72 Amer. Dec. 437, *supra,* decided by the New York court of Appeals in 1858. That case, like this, was based on the negligence of the city in allowing an excavation in the street, made in the construction of a sewer, to remain open and unguarded during the night time, in consequence of which the plaintiff fell in and was hurt. The city was held liable apparently on each of the grounds above discussed. The cause of the accident, said Judge Comstock, "was not in the manner in which the work was carried on by the laborers; if it had been, their immediate employer, and he only was liable for the injury." " But,'' he continues, " in a sense strictly logical, as it seems to me, the accident was the result of the work itself, however skillfully performed. A ditch can not be dug in a public street and left open and unguarded at night without imminent danger of such casualties. If they do occur, who is the author of the mischief? Is it not he who causes the ditch to be dug, whether he does it with his own hands, employs laborers, or lets it out by contract? If by contract, then I admit that the contractor must respond to third parties, if his servants or laborers are negligent in the immediate execution of the work. But the ultimate superior or proprietor first determines that the excavation shall be made, and then he selects his own contractor. Can he escape responsibility for putting a public street in a condition dangerous for travel at night by interposing the contract which he himself has made for the very thing which creates

the danger? I should answer this question in the negative."

In the same case this principle is applied to a municipal corporation which owes to the public the duty of keeping the street in safe condition for travel, and the proposition is asserted that this duty can not be thrown off or devolved on another, who contracts for the construction of sewers or other improvements in the public streets. "Although," it is said, "the work may be let out by contract, the corporation still remains charged with the care and control of the street in which the improvement is carried on. The performance of the work necessarily renders the street unsafe for night travel. This is a result which does not at all depend on the care or negligence of the laborer employed by the contractor. The danger arises from the very nature of the improvement, and if it can be averted only by special precautions, such as placing guards or lighting the street, the corporation which has authorized the work is plainly bound to take these precautions. The contractor may very probably be bound by agreement, not only to construct the sewer, but also to do such other acts as may be necessary to protect travel. But a municipal corporation," he concludes, "can not, I think, in this way either avoid indictment in behalf of the public, or its liability to individuals who are injured."—*Storrs v. City of Utica*, 72 Amer. Dec. 437; 440.

We make no apology for quoting so much at length from this case, where the subject under consideration is so ably and learnedly discussed. That case is strictly analogous to the one in hand, and has been followed by the United States Supreme Court, as well as by nearly all of the State courts except in Pennsylvania and a single case in Missouri, which seems however to have been impliedly overruled by a later decision in the same State.—*Blake v. St. Louis*, 40 Mo. 569; *Barry v. St. Louis*, 17 Mo. 121; *Painter v. Mayor*, 46 Penn. St. 213. The decisions of these States, relied on in the argument of this cause by the appellant's counsel, have been generally condemned in this country, and we are unwilling to follow them.—*Storrs v. City of Utica*, 72 Amer. Dec. p. 437; note on p. 441, and cases cited.—*City of Erie v. Caulkins*, 85 Penn. St. 247; s. c. 27 Amer. Rep. 642 and note pp. 647-650; *Robbins v. Chicago*, 4 Wall. 657; *Chicago v. Robbins*, 2 Black. 418; *Water Co. v. Ware*, 16 Wall. 566; *City of Springfield v. LeClaire*, 49 Ill, 476; *City of Detroit v. Corey*, 9 Mich. 165; *Circleville v. Neuding*, 41 Ohio St.

[Mayor and Aldermen of Birmingham v. McCary.]

465; *City of St. Paul, v. Seitz,* 3 Minn. 297; *Nashville v. Brown,* 9 Heisk. 1; s. c. 24 Amer. Rep. 289; *Wilson v. City of Wheeling,* 19 W. Va. 323; s. c. 42 Amer. Rep. 780; *Mayor, &c. of Baltimore v. O'Donnell,* 53 Md. 110; s. c. 36 Amer. Rep. 395; *City of Logansport v. Dick,* 70 Ind. 65; s. c. 36 Amer. Rep. 166; *City of Buffalo v. Holloway,* 57 Amer. Dec. 550; 2 Dillon Mun. Corp. (3d Ed,) §§ 1027; 1029-1030; Wood on Mast. & Serv. (2nd Ed.) p. 616, sec. 316.

The City Court substantially conformed its rulings to the foregoing principles. . The excavation made across the side walk of the city, in the process of constructing the sewer, was made by the express authority of the city in the exercise of a purely ministerial power. Stonestreet, notwithstanding the general independent nature of his employment as a contractor, was a *quasi* agent of the municipal authorities for this purpose. If he had been indicted for creating a nuisance he could only have defended under the right conferred by them and as their agent *pro hac vice.*—*City of Detroit v. Corey,* 9 Mich. 164; *Nashville v. Brown,* 24 Amer. Rep. 289. The excavation was one which in its nature would be intrinsically or necessarily accompanied with danger to pedestrians if left uncovered, or unguarded and without proper lights in the night time. The duty of the city, imposed by its charter, was to see to it that its sidewalks were kept in a reasonably safe condition for ordinary use by the public. This duty it could not escape by letting out the work to a contractor. The authorities should have seen to it that the contractor performed this duty, and for this act of negligence they are liable for any injury and damages proximately resulting from it, to which the plaintiff did not contribute by his want of ordinary care. The court, in effect, so charged.

In cases of this nature, it is manifest that special notice to the city of the dangerous condition of the street, where the excavation is made, is not a prerequisite to liability. The work being done by the express authority of the city, and in a measure under the eye of its engineer, and necessarily dangerous in its nature, the municipal authorities are charged with notice of its existence.—*Brusso v. The City of Buffalo,* 90 N. Y. 679; *City of Springfield v. LeClaire,* 49 Ill. 477. There is a class of cases where the liability of the city is made to depend on its negligence to keep its streets in repair, and the question of negligence is depend-

ent on notice to the city of the existence of some defect or obstruction causing the injury. But where an agent or *quasi* agent of the city creates the defect by an authorized act, as here, the law imputes notice to the employer.—2 Dillon Mun. Corp. (3rd Ed.) § 1025, *note* 1.

In this case different conclusions may well and reasonably have been drawn from the evidence on the question of contributory negligence *vel non* on the part of the plaintiff, and for this reason the court properly submitted this inquiry to the jury, and declined to determine it as a matter of law. *City Council of Montgomery v. Wright*, 72 Ala. 411; *Eureka Co. v. Bass, Admr.*, 81 Ala. 200; s. c. 60 Amer. Rep. 152.

We find no error in any of the rulings of the court, and the judgment is affirmed.