# Southern Railway Company v. Lewis.

## Damage for Flooding Land.

(Decided Feb. 8, 1910. 51 South. 746.)

1. *Master and Servant.*—A master, principal owner or operator is not liable for negligence of the independent contractor, even though he may direct control and approve the work, which is negligently done; but if the work is hazardous in itself or will however skillfully done, be necessarily or intrinsicaly dangerous, or liable to result in injury to another, or if there is a law imposed duty to keep the subject of the work in a safe condition, the owner is liable the same as if he had done the work himself.

2. *Same; Flooding Lands.*—Where there was no negligence in the work as done but the injury results from the construction of the work itself, it is no defense thereto that the work was done by an independent contractor.

3. *Waters and Water Courses; Flooding Land; Act of God.*—The act of God in sending unprecedented rains is no defense to an action for flooding lands where the making of an excavation by a railroad is unlawful in that it caused surface waters to flood the land, which but for the excavation would have gone in another direction.

4. *Same; Surface Water; Drainage.*—The rights and duties of adjoining landowners as to surface waters and the drainage thereof while different from their rights and duties as to streams flowing through their lands as to which they are riparian owners. are governed by the same maxim, "water flows, and as it flows, so ought it to flow" and "so use your own property as not to injure that of another."

5. *Same; Property Rights.*—Landowners have no property right as to surface waters by virtue of the ownership of the land on which they are.

6. *Same; Artificial Channel; Rights of Servient Estate.*—Natural channels for the drainage of surface water must be kept open, and the lower estate is subject to the servitude of receiving the water through the accustomed channels; but the owner of land on which surface water comes by nature cannot collect it in artificial drains or ditches and thereby cast it on the lower servient estate, or so near the line that it will naturally flow on the servient estate.

7. *Same.*—In the drainage of city or village lots the rights of the public health are involved and the rule that the owner of the upper estate on which surface waters come, cannot collect it into artificial drains and so discharge it on the lower servient estate, does not apply to such city or village lot, where property therein for such artificial drainage has been obtained, or which from necessity must be so draineod.

8. *Same; Flooding Lands; Liability.*—A railroad which has made an excavation on its right of way which collects surface waters and throws them upon land on which is situated a foundry and coal and coke yard cannot set up as a defense thereto that such action does not apply to city or village lots where there has been no artificial drainage provided by law and no necessity therefor, and the excavation is not caused by the building of the city or improvement of a city lot.

9. *Same; Riparian Rights; Property in.*—The property right of a riparian owner to a stream bordering on their land constitutes a part of the land and passes with it.

10. *Flooding Lands; Evidence.*—Where the action was for damage for flooding lands caused by the digging of an excavation, it was competent for plaintiff to testify that he told those making the excavation that they were excavating too close to the ditch, and that it was by reason of such excavation that the banks of the ditch gave way and through which the waters entered and flooded the land, since it has a tendency to show that the excavation caused the injury and that it was known to defendant at the time and hence, might authorize the assessment of punitive damages.

11. *Same.*—Where the action was for damage for flooding lands caused by an excavation having been made so near a ditch as to cause its walls to break in, it was competent to show conversations between an agent of plaintiff and the party doing the excavation for defendant relative to the cutting down of the bank of the ditch, such conversations being had during the progress of the work, as they were part of the res gestae of the transaction and was notice to the defendant of the damage it would thereby cause the plaintiff to suffer.

12. *Same; Excavations; Repairs.*—Where the action was for damage for flooding land caused by the breaking of the wall of a ditch on account of excavations being made too close thereto, the fact that defendant repaired the banks of the ditch after the third overflow and that thereafter there were no overflows, is admissible for the purpose of showing that the excavation caused the overflow; nor did the fact that such evidence was favorable to the defendant on the question of damages render it incompetent.

13. *Evidence; Opinion.*—On an issue as to whether an excavation caused the wall to break, thereby flooding lands, the question to a witness as to whether or not he left enough bank to hold the water in a ditch, etc., was properly disallowed as calling for the opinion of the witness.

APPEAL from Calhoun Circuit Court.

Heard before Hon. A. H. ALSTON.

Action by S. A. Lewis against the Southern Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

The complaint was as follows: (1) "Plaintiff claims of the defendant $250 as damages, for that heretofore,

to wit, on and prior to the 7th day of July, 1906, and subsequently thereto, defendant maintained a railroad track or tracks in Anniston, Calhoun county, Alabama; said tracks running in a northerly and southerly direction, and near to a foundry and machine shop and coal and coke yard operated and owned by plaintiff in Calhoun county, Alabama, alongside or near said track or tracks. Plaintiff further avers that shortly prior to the 7th day of July, 1906, defendant caused to be excavated, or excavated, the lands west of said track or tracks, and by such excavation the course of the surface drainage of the lands to the north and west of plaintiff's said shop and yard was changed, so that great quantities of water, which otherwise would have flowed away from said property without injury thereto, were by reason of, and as a proximate consequence of, said excavation caused to overflow plaintiff's said property, and said foundry was flooded. Plaintiff incurred great expense in cleaning up and remedying the results of said flooding. The work in said foundry was stopped for several days on account of said flooding. The coal and coke in plaintiff's yard was washed away in large quantities, and was greatly damaged and depreciated in value by reason of being so flooded and washed away. Great quantities of mud and slush and debris were caused to get mixed with said coal and coke, and great quantities of such material were washed into said foundry, and plaintinff was greatly inconvenienced and incommoded in and about the operation of said foundry and machine shop, and in and about the conduct of said coal and coke yard. Plaintiff further avers that said flooding occurred on, to wit, the 7th day of July, 1906, and plaintiff was damaged as aforesaid on and subsequently to that date."

(2) Same as first, down to the last allegation thereof, with the following addition: "Said flooding occurred

heretofore, to wit, on the 17th day of July, 1906, and was a separate and distinct flooding from that alleged in the first count." (3) Same as 1 down to the last paragraph thereof, with the following addition: "Said flooding occurred heretofore, to wit, on the 5th day of September, 1906, and was a separate and distinct flooding from that alleged in the first and second counts." The pleas are sufficiently set forth in the opinion.

KNOX, ACKER & BLACKMON, for appellant.—Owners or proprietors are not liable for the negligent act of independent contractors, and the fact that the work is done subject to the supervision and control of the chief engineer of the defendant company, does not render the defendant liable.—*Scarborough v. Ala. Mid. R. R. Co.*, 94 Ala. 499; *Ala. Mid. R. R. Co. v. Martin*, 100 Ala. 511; *R. & D. R. R. Co. v. Chasteen*, 88 Ala. 501; *Casement & Co. v. Brown*, 148 Ala. U. S. 615. The court erred in its several rulings on the testimony and on the charges in excluding evidence that the rainfall on the days of the overflow was extraordinary and unusual, and in charging the jury that it was immaterial to the question of defendant's liability whether the rainfall was unusual and excessive or not.—*C. & W. R. R. Co. v. Bridges*, 86 Ala. 448; *Arndt v. Cullman*, 132 Ala. 551; 76 Mo. 517; 67 Cal. 607; 85 Me. 34. The court also erred in admitting testimony that the railroad had fixed the ditch and that no more trouble had been experienced.—*Going v. Ala. S. & W. Co.*, 141 Ala. 537; *Davis v. Cornman*, 141 Ala. 479. The court also erred in permitting the evidence of conversation between the contractor and an agent of the plaintiff relative to the closeness of the excavation to the ditch bank.—*A. G. S. . Hawks*, 72 Ala. 112; *Tanner v. L. & N.*, 60 Ala. 621; *M. & M. R. R. Co. v. Ashfraft*, 48 Ala 15.

MATTHEWS & MATTHEWS, for appellee.—The question of negligence vel non is not in this case nor is that of the rights respecting the natural flow of water from dominant over servient lands. The only question is whether or not the injury resulted from the making of the excavation.—*C. of G. v. Wyndham,* 126 Ala. 552; *Massey v. Oates,* 142 Ala. 248; *Ala. Mid. v. Crostry;* 92 Ala. 254. Hence, the question of the negligence of the independent contractor does not offer any defense. The quality or quantity of the rainfall was irrelevant and immaterial in this case.—*C. of G. v. Wyndham,* supra. The 4th charge was properly refused.—*Smith v. W. Ry. Co.,* 91 Ala. 556. On the authority of the above cases, the court did not err as to the evidence or the charges.

MAYFIELD, J.—This is an action by appellee, a lower landowner, against appellant railroad company to recover damages caused by the flooding of plaintiff's premises. The flooding is alleged to have been caused by the defendant's company's excavating, or causing to be excavated, the land west of its railroad track, thereby changing the course and flow of the surface drainage of the land to the north and west of plaintiff's land and plant, so that the surface drainage water from this territory, above plaintiff's land and plant, was made thereby to flow upon and over plaintiff's property to his great damage, etc.; that but for the excavation complained of the water would, and did prior thereto, naturally flow away from plaintiff's property, and not to or over it, as it did after the excavation, with appropriate averments as to damages suffered in consequence thereof. The complaint contained three counts, all alike except that each claimed special damages for a particular and distinct overflow or flooding occurring at a dif-

ferent date named therein, caused by the excavation. To the complaint the defendant pleaded the general issue the statute of limitations of 10 years, contributory negligence, the act of God in sending unprecedented rains, and that the excavation was done by an independent contractor. All of these pleas were stricken from the file, except the general issue, upon which the trial was had, which resulted in a verdict for plaintiff, as to each of the three counts, in the aggregate sum of $300. From this judgment defendant appeals.

The first assignment insisted upon is that the defendant is not liable in this action, because the excavation directing the waters was done by the defendant's independent contractor, and not by it, its agents, or servants. True, the law is, as is insisted by counsel for appellant, that a master, principal, owner, or operator is not liable for the negligence of his independent contractor, and is not so liable though he may direct, control, and approve the work which is negligently done; but it is equally well-settled law that if the work contracted to be done is of itself hazardous or will, in its progress, however skillfully done, be necessarily or intrinsically dangerous, or liable to result in injury to another, or if the law imposes on the master or owner the duty to keep the subject of the work in a safe condition, the owner or contractee is liable, the same as if he performs it himself.—Wood on Master & Servant (2d Ed.) p. 603; *Cuff's Case,* 35 N. J. Law, 17, 10 Am. Rep. 205; *McCary's Case,* 84 Ala. 472, 4 South. 630, in which the above and many other authorities are cited. If the work to be done by the contractor cannot be done without danger or injury to third parties, if its very nature and existence is such as to cause or produce danger or injury, the owner, master, or contractor is liable as if he performs it himself. If the work is not necessarily

dangerous, and will not, if properly executed, result in danger or injury to third parties, but is rendered so only by the negligent manner in which it is performed, then the owner, master, or operator is not liable, but only the independent contractor. In this case there is no allegation or claim that the work was negligently done. It was the doing of the work in any manner that was alleged to have constituted the wrong. Probably the better it was done the greater was the wrong or injury to the plaintiff. There was no attempt on the part of either party to show that the work was negligently done, or was done in a manner not contemplated, ordered, and directed by the defendant. Hence, as to this action, it was immaterial that the work was done by the defendant's contractor. While the later cases in this state, cited by counsel for appellant, to wit, *Martin's Case,* 100 Ala. 511, 14 South. 401; *Scarborough's Case,* 94 Ala. 499, 10 South. 316; *Chasteen's Case,* 88 Ala. 591, 7 South. 94, and many others not cited, emphasize the rule that the master, owner, or contractor is not liable for the torts, negligence, etc., of the contractor, his agents, or servants, none of them deny the other rule above announced and amplified by Mr. Wood on Master and Servant.—Dillon on Municipal Corporations (3d Ed.) § 1029, and *McCary's Case,* 84 Ala. 472, 4 South. 630. Hence there was no error in the various rulings of the trial court as to the question of law.— *Windham's Case,* 126 Ala. 552, 28 South. 392; *Behrman's Case,* 136 Ala. 508, 35 South. 132; *Coskry's Case,* 92 Ala. 254, 9 South. 202; *Massey v. Oates,* 143 Ala. 248, 39 South. 142.

Partly, but not wholly, for the same reason that the defendant in this case cannot escape liability, because the excavation was done by its independent contractor, it cannot escape liability because the flooding in ques-

tion was the act of God—that is, unprecedented rains. Had the defendant undertaken and attempted to protect the plaintiff's property from the surface and drainage waters diverted by it, and had done so, the work of excavating had been necessary and proper and not unlawful in itself, so far as the rights of the plaintiff were concerned, and the plaintiff's property had been injured only on account of the unprecedented rain, the act of God might have been a defense. But where the act itself, as in this case, was unlawful, and the very nature of it was to turn the flood upon the plaintiff, which would have gone in another direction but for the wrongful act, the flood can be no defense, unless it be shown that the injury suffered would have resulted with or without the alleged wrongful act of defendant. All rains are in a sense the act of God; and, as all surface water falling in this state is the result of rain—there being very little snow or sleet—the very act complained of here was the turning upon plaintiff's premises of this water (to his damage) which would have gone away from it but for the wrongful act. The greater the rains, the greater the damage. It would indeed be a strange law that would say,: "If you do a small damage, you will be liable therefor, but, if you do a very great wrong —greater than was anticipated—the excess will of itself constitute a defense." Could a man who wrongfully tore the roof off his neighbor's house in order to get the shingles to cover his own defend an action brought by his neighbor to recover damages for the destruction and injury to plaintiff's house and household goods by the rain, snow, or hail, on the ground that the rain, snow, or hail was unusual, unprecedented and excessive—that is, be liable for the damages done by a moderate and usual rain, snow or hail, but not for an unusual and excessive one? We think not. This is, in effect, what de-

fendant sought to do in this case by pleading and attempting to set up the act of God as a defense. The defense is no doubt a righteous one in a proper case, but this is not such a case.

The rights and duties of adjoining landowners as to surface water and the drainage thereof are different from the rights and duties as to streams of water flowing through their lands, as to which streams they are riparian owners. However, some of the same maxims apply to both cases, and upon these most all the law of waters is said to be based, to wit: (1) "So use your own property as not thereby to injure that of another." (2) "Water flows, and as it flows, so it ought to flow." The owners of land bordering upon flowing streams or through which such streams flow, or bordering upon lakes and ponds, or upon which such lakes and ponds are wholly situated, have certain property rights in and to such water by virtue of their ownership of the land. These rights constitute a part of the land, and pass with it by conveyances of the land. But they have no such rights as to surface water. The question as to this is, How may the owner of the land get rid of it? Thus is raised the question of the right of drainage of it. One owner has no right to drain the water off his land and discharge it onto that of his neighbor by purely artificial channels which flow through his own land.

There is some conflict of authority as to whether natural depressions such as washes, gulleys, and ravines must be kept open by the owner, so as to let the surface water go in its accustomed and natural channels across the owner's land. The better or at least the more general rule seems to be that the natural drains must be kept open, and that the lower estate is subject to the servitude of receiving this water through its accustomed and natural channels. However, some courts (but this

is not one of them) hold that there is no such servitude or duty upon the lower land to receive the surface water flowing naturally onto it, as that the owner may not dam and levy against it and throw it back upon his neighbor. This is sometimes called the "common-law and common enemy" doctrine or rule—probably because these cases and this doctrine denominated surface water as the "common enemy of mankind," and held therefore that every one had a right to fight it as he pleased, without regard to the rights of others. That is, that every landowner could take it off, or keep it off his premises in any manner or by any means he chose, provided he did not go on his neighbor's land to do it. This is one instance in which this state has adopted the rule of the civil law instead of that of the common law. Under this rule this court has repeatedly announced the doctrine that the owner of land on which surface water comes by nature cannot collect it in artificial drains or ditches, and thereby cast it upon his neighbor's land, or so near the line that it will thereby naturally flow on or to his neighbor's; that he cannot change the natural flow of such water so as to divert it onto his neighbor A., whereas naturally it would go onto his neighbor B. The owner has no right to so grade his land or to so erect embankments as to thus turn the natural flow of the surface water, nor can he gather this surface water into a body on his own land, and then discharge it in a body, when without being so collected and discharged it would have been scattered and diffused over greater territory.

There is an exception or a limitation to the rule above announced, and that is, it does not apply to city or village lots, property for which artificial drainage has been obtained, or which, from necessity, must be so drained. This may be necessary under the laws of hy-

giene. The question of drainage involves not only the private property rights of the owner, but it sometimes involves the rights, health, and wellbeing of the public · —in which case the individual rights of the owner yield to the common right of all. But if there be no artificial drainage provided by law, and no necessity therefor, and the land be not the usual city lots for ordinary building purposes, then the reason for the rule ceases, and the rule with it.

We do not think that the case in question falls within the rule that excepts city lots from the general rule of servitude.—*Crabtree v. Baker,* 75 Ala. 95, 51 Am. Rep. 424; *Hall v. Rising,* 141 Ala. 433, 37 South. 586; 3 Farnham on Waters & Water Rights, p. 2607, §889e. The work in question, complained of, cannot be said to have been occasioned by the building of a city or the improvement of a city lot, so as to fall within this exception. Each count of the complaint stated a cause of action, and was certainly not subject to any ground of demurrer interposed thereto, and there was abundant evidence to support the verdict and judgment found by the jury under each. It was not necessary that the complaint should allege that the work of excavation was negligently done. It was sufficient to show that it was wrongfully done and that plaintiff was damaged in consequence thereof.

It was competent for plaintiff to show that he had called to the attention of the persons who were doing the excavating that it was too near the ditch on the road, and to prove that, by reason of it, the banks of the ditch were so weakened that they would not hold the water, and that the banks, in consequence thereof, broke and allowed the water to flow out of the ditch onto plaintiff's premises, to his damage. This evidence was proper, both to show that the excavation complained of

caused the injury, and also to show scienter on the part of the defendant that the damage and injury would probably follow the wrong being done. Such evidence might authorize the jury to award punitive damages.

The court properly sustained the objection to the question propounded to the witness Mable, "Did you leave enough bank to hold the water in the ditch," etc. This clearly called for the gratuitous opinion or conclusion of the witness. He should have been required to state the facts, and let the jury draw the conclusions. The undisputed facts answered the question against the contention of the defendant. It was perfectly competent for plaintiff to prove what the railroad company did to the embankment and ditches in question after the third overflow. The fact that this evidence was favorable to defendant, as to the amount of damages recoverable, in that it tended to show that the injury to plaintiff's premises was no longer a continuous one—that there had been no further flooding after the defendant repaired its embankment and ditches—did not render it incompetent. It also tended to show, or was admissible for the purpose of showing, that the overflow was the result of the defendant's excavating, as alleged, and not the result of some other cause, according to the tendency of some of defendant's evidence. The conversation between plaintiff's agent and Mable, who was doing the excavating in question for the defendant, relative to the cutting down of the embankment of the ditches, made, as it was, during the progress of the work, was admissible as a part of the res gestæ, and also to show that the defendant knew, or ought to have known, of the damage and injury it would thereby cause the plaintiff to suffer. This knowledge or notice would tend, or might tend, to show that the act complained of was wantonly done—done with knowledge of the probable con-

sequence, and in utter disregard of plaintiff's rights in the premises.—*Windham's Case*, 126 Ala. 560, 20 South. 392.

This disposes of all the assignments insisted upon, and we find no reversible error in these or any others assigned.

The judgment of the court is affirmed.

Affirmed.

ANDERSON, MCCLELLAN, and SAYRE, JJ., concur.