# Shanan v. Brown, et al.

## Damages for Changing Flow of Water.

(Decided January 16, 1913.　60 South. 891.)

1. *Waters and Water Courses; Surface Water; Artificial Conditions; City Lots.*—On account of artificial conditions created or to be created, town or city lots are exempted from the general rule making land legally servient to the natural flow of surface waters.

2. *Same; Sub-Surface Water; Presumptions.*—In the absence of averment or proof that sub-surface waters are supplied by a defined, flowing in channel spring, the presumption is that such waters come from circulation under ordinary conditions, and the rule applicable to such waters is substantially the same as that applicable to unchanneled surface waters.

3. *Same; Urban Lots; Liability for Flowage.*—A lower proprietor of urban lots owes no duty to an upper proprietor of urban lots to afford drainage for unchanneled surface or sub-surface waters in or on the upper lot, nor to refrain from the improvement of his lots because it will prevent the natural flow of such waters from the upper onto the lower lot, so that the upper lots may be drained; hence a complaint merely alleging ownership by plaintiff and defendant of separate lots in a block, that the natural drainage from plaintiff's property was over defendant's property, that defendant prevented the water in times of rainfall from flowing off of plaintiff's property and caused it to accumulate on and overflow plaintiff's property did not state a cause of action, although it also alleged that it flowed through a well-defined channel over plaintiff's lot, since the latter allegation referred only to water from rainfalls.

4. *Same.*—A complaint alleging that plaintiff and defendant owned separate lots in a block in a city, that the natural drainage from the property was from plaintiff's to defendant's property, that the defendant constructed on his lot an artificial lake, that the improvement interfered with the flow of subterranean waters or streams, or with the flow of streams or seepage from plaintiff's elevated lot under natural conditions, does not state a cause of action as against appropriate demurrer, as the weaker alternative averment describes waters flowing without a distinctly defined channel and a pleading is no stronger than its weakest alternative.

5. *Same; Interfering With Flow.*—The construction of a lake on a city lot by the owner thereof building a wall around it is not a wrongful improvement and is within the exception applicable to the creation of artificial conditions in or about city property and the owner is not thereby rendered liable for interfering with the natural flow of unchanneled water on elevated, adjacent lots.

6. *Appeal and Error; Review; Showing Error.*—Unless the motion and ruling is shown by the bill of exceptions the sustaining of a motion to strike replications will not be considered on appeal.

APPEAL from Gadsden City Court.

Heard before Hon. JOHN H. DISQUE.

Action by W. P. Shanan against A. Brown and others for damages for changing the flow of waters. From a judgment for defendants, plaintiff appeals. Affirmed.

The complaint was as follows:

"(1) Plaintiff claims of defendant the sum of $2,500 damages for that on and prior to the grievances hereto complained of plaintiff was the owner of certain property in the city of Attalla, Etowah county, Ala., in lots 3 and 4, in block 9, according to the original plat of said city, on which said property plaintiff had two residence houses, and plaintiff avers that the natural drainage and flow of water from said property in times of rainfall was over and along a lot adjoining the south and southwest sides of plaintiff's property, that the defendants built a wall several feet high on said lot adjoining plaintiff's property, which prevents the natural flow of water in times of rainfall from plaintiff's property. And plaintiff avers that said wall at various times during the summer of 1908, and the fall and winter following of 1908, and up to this time during the year, prevented the water in times of rainfall during said seasons from flowing from plaintiff's property, and caused it to accumulate, overflow, and stand on said property, and in consequence of which the house and tenements on said property have been greatly damaged, and the value of said property greatly diminished, and said houses rendered unfit for use as residences.

"(2) Plaintiff, by leave of the court, here adopts as part of this count all of count 1, from the beginning thereof down to and including the words, 'which prevented the natural flow of water in times of rainfall from plaintiff's property.' And plaintiff avers that during the months of April, May, June, and July, 1908,

there were constant rainfalls, and that, by reason of
said wall, the waters were prevented from flowing from
plaintiff's property, and in consequence thereof accu-
mulated and overflowed most of plaintiff's property,
thereby injuring the residences thereof, and rendering
them uninhabitable and greatly damaging the value of
said property.

"(3) Plaintiff by leave of the court here adopts as a
part of this count all of count 1 from the beginning
thereof down to and including the words 'which pre-
vented the natural flow of waters in times of rainfall
from plaintiff's property.' And plaintiff avers that dur-
ing the months of December, 1908, January, February,
and March, 1909, there were constant rainfalls, and
that, by reason of said wall, the waters were prevented
from flowing from plaintiff's property, and in conse-
quence thereof they accumulated upon and overflowed
most of plaintiff's property, thereby injuring the resi-
dences thereon, and rendering them uninhabitable, and
causing the plaintiff to lose the rents thereof and great-
ly damaging the value of said property. Wherefore
plaintiff says he has been damaged as shown by the sev-
eral counts of this complaint; hence this suit."

Count 3 was amended by adding the following:
"That at the time of the commission of the wrongs com-
plained of there was no artificial means provided by
law for the drainage of his said lot; that the waters
falling upon said lot or flowing over and across the
same passed off of his said lot on and upon the said
lands inclosed by said wall, and through a well-defined
channel over and across his said lands and onto the
said lands inclosed by said wall; that there was no
means of artificial drainage provided by law, or by de-
fendants, for the drainage of plaintiff's said lot after
the construction of said lake; and plaintiff avers that

[Shanan v. Brown, et al.]

it was necessary after the construction of said lake that his said lot be artificially drained, and no adequate provision therefor was made by defendants."

"Count 4. Plaintiff by leave of the court here adopts as a part of this count all of count 1 from the beginning thereof down to and including the words, 'which prevented the natural flow of water in times of rainfall from plaintiff's property.' And plaintiff avers that the rainfall upon this said lot and upon the adjacent lots and which accumulated upon the streets and avenues of Attalla, and flowed upon plaintiff's lot, flowed upon defendant's property or reached defendant's property, and entered thereon by percolation through the soil, and accumulated on defendants' said property and against said wall thereon, either on the surface or by percolations through the soil upon or under the surface of plaintiff's said lot, and caused it to be wet and soggy, and rendered it of much less value, and rendered plaintiff's residence and tenements thereon of much less value, to plaintiff's said damage.

"Count 5. Comes the plaintiff, and by leave of the court first had and obtained amends his complaint in said cause as follows: He adopts as part of this count all of count 1 from the beginning thereof down to and including the words, 'had two residences thereon.' And plantiff avers that his said lot was several feet more elevated than lots 1, 8, 7, and 2 of said block 9, and that there was situated upon 1, 8, 7, and 2 of said block 9, several springs of water, all of said lots, together with said lot lying at or near the base of elevated lands from which said springs had this source, that defendants constructed a lake, covering the greater parts of said lots 1, 8, 7, and 2, surrounded by a cement wall two feet or more higher than plaintiff's lot, and raised the surface of said lake to near the top of said wall and

[Shanan v. Brown, et al.]

higher than plaintiff's property; that, in and by the construction of said lake, the streams originally supplying and flowing out through said springs located on said lands now covered by said lake, or waters from said lake, were caused to break out on plaintiff's property, rendering his lots wet, soggy, and marshy, and the houses thereon unfit for habitation, all to plaintiff's great damage as herein claimed.

"Count 6. Plaintiff adopts all that part of count 1 from the beginning thereof down to and including the words, 'which prevented the natural flow of water in times of rainfall from plaintiff's property.' And plaintiff avers that defendants in the year 1907 or 1908 constructed an artificial lake in said city of Attalla of some 1½ acres in area on lands adjoining plaintiff's said lot, said lake comprising lands surveyed and platted some 30 years ago as city property and the greater part of four several lots, viz., 1, 8, 7, and 2 of said city, and as platted being 100 feet by 192½ feet; that in constructing said lake defendants erected a cement wall of some 10 to 12 feet in height around the property, and parts of said lots, inclosed in said lake; that prior to the construction of said lake there were several springs on the lands inclosed in said walls; that the head of said springs where they flowed out from the ground was several feet lower than plaintiff's lot; that the head of said springs in making said lake, and in supplying water for said lake, was raised several feet; that the water originally supplying said springs and flowing out therefrom reached them by subterranean streams or seepage from the higher grounds around, and flowed off from said springs without interference with plaintiff's said lot. And plaintiff avers that, in constructing said lake and in raising the water therein as herein averred, the subterranean waters or streams

which originally found an outlet through springs on the property inclosed in said lake, or waters from said lake, were caused to break out in springs or seep on and into plaintiff's said lot, rendering said lot constantly wet, soggy, and marshy, and the said houses, thereon unfit for habitation, all to plaintiff's great damage as herein averred."

The demurrers to counts 1, 2, and 3 as originally filed were that they contained several distinct causes of action, in that they seek to recover in the same count for injuries which occurred at various times during the summer of 1908 and the fall and winter of 1908, up to the time of bringing this suit in 1909; they failed to show at what time the wall was erected or the lake constructed, failed to show that the natural drain and flow of waters was interfered with by the erection of said wall; it does not describe with sufficient certainty the property of plaintiff. To the amended count 3, because it fails to state whether the lots were town lots or country property; defendant is not required to provide any drainage for plaintiff's lot, and the counts show no violation of any duty owed by defendants to plaintiff, and the statement that there was no artificial drainage provided by law is a legal conclusion, and the failure to provide artificial drainage shows no violation of any duty defendants owed the plaintiff, and that it appears that the lots were city lots, and that the counts showed they were city lots. The same demurrers were interposed to counts 4, 5, and 6, with these additional grounds: The underground waters were not averred to be known to flow in a definite channel underground, and there is no difference between surface waters and subterranean waters in the improvement of city lots.

JOHN A. INZER and E. O. McCORD, for appellant. Under the facts and circumstances of this case the ex-

ceptions as to city lots cannot benefit defendant and
the civil law is left in full operation.—*Ninninger v.
Norwood,* 72 Ala. 276; *Crabtree v. Baker,* 75 Ala. 91;
*Farris, et al. v. Dudley,* 78 Ala. 124; *Hall v. Rising,*
141 Ala. 431; *Sou. Ry. Co. v. Lewis,* 165 Ala. 555. Coun-
sel discuss the other assignments of error in the light
of these decisions and insist that the court was in er-
ror in sustaining the demurrers to the complaint, in
its rulings on the evidence, and the instructions given
and refused.

DORTCH, MARTIN & ALLEN, for appellee. The rule
and the exception as to city lots will be found well
stated in *Rising v. Hall,* 141 Ala. 431; 3 Farnham on
Waters, 897. Under these authorities counts one and
two are unquestionably subject to demurrer. In view
of these authorities and the facts in this case the court
unquestionably was right in instructing the jury to re-
turn a verdict for the defendant. As to the principle
governing waters varying with the kinds of waters un-
der discussion see the following authorities: 53 Amer-
St. Rep. 262; 3 Farnham on Waters, section 935 and
947.

McCLELLAN, J.—Action by appellant against ap-
pellees for damages in consequence of alleged wrongful
injury to plaintiff's property (lots) attending interfer-
ence with the flow of waters. In brief for appellant it
is said that the solution of a single question will deter-
mine the controversy. The court gave the general af-
firmative charge for the appellees upon their request.

Since it has been long settled in this state that town
or city lots are, because of artificial conditions created
or to be created, excepted from the general rule that
makes land legally servient to the natural flowage of

unchanneled waters, the question mentioned arises out of the plaintiff's insistence that the structural changes from natural conditions wrought by the defendants upon their lots were not such improvements of urban property as enjoy the protection or sanction of the before-stated exception in favor of the improvement of urban property whereby the natural flowage of unchanneled surface, or unchanneled subsurface, waters may be deflected or prevented without legal wrong to other proprietors.—*Nininger v. Norwood,* 72 Ala. 277, 47 Am. Rep. 412; *Crabtree v. Baker,* 75 Ala. 94, 51 Am. Rep. 424; *Farris v. Dudley,* 78 Ala. 124, 56 Am. Rep. 24; *Hall v. Rising,* 141 Ala. 431, 37 South. 586; *Sou. Ry. Co. v. Lewis,* 165 Ala. 555, 51 South. 746, 138 Am. St. Rep. 77. Block 9, in Attalla, Ala., was in the early 70's subdivided into eight lots, consecutively numbered, and a public alley separating the tier of lots numbered 1 to 4 from that numbered 5 to 8. The plaintiff's lots are those numbered 3 and 4. The defendants own lots 1, 2, 7, and 8. All of their lots are lower than lots 3 and 4, and the natural flow of surface, and percolating waters, from lots 3 and 4 was originally on or into the defendants' lots. All of the block is a low area. Defendants' lots had springs upon them, and the natural channel or drain of the spring or springs was through defendants' lots to a manhole on Third street. Defendants constructed a wall, making a lake or pool upon their lots 1, 2, 7, and 8—crossing the alley therewith. The pool does not cover all of lots 2 and 7. On the map the wall of the lake on lot 2 is several feet from the line between lot 2, belonging to defendants, and lot 3, belonging to plaintiff. The effect of the construction of the wall around the pool is, as we understand it, to impound the water from the springs and their low surroundings on defendant's lots, and to prevent

the flowage of surface and percolating waters from the land above, a part of which plaintiff's lots are; the result being, as plaintiff alleges, to render his lots marshy and wet, less desirable than theretofore for tenancy, and to depreciate their value.

In the absence of averment or proof, as the case may be, that subsurface waters are supplied by a defined, channeled, flowing streams, the presumption is that such waters come from ordinary percolations.—3 Farnam on Waters, § 947; *Tampa Water Co. v. Cline,* 37 Fla. 586, 20 South. 780, 33 L. R. A. 376, 53 Am. St. Rep. 262, 272. The rules of law applicable to such waters are substantially the same as those applicable to unchanneled surface waters.—3 Farnam, supra, and notes thereto; *Tampa Water Co. v. Cline, supra.* Aside from counts 3, 5, and 6, added to the complaint by amendment and to be later considered, each of the other counts of the complaint rested the allegation of wrong, and claim of right to compensation for the damage averred, upon conduct affecting the flowage of unchanneled surface or subsurface waters.

As indicated, the lower proprietor of urban lots owes no duty to the upper proprietor of urban lots to afford drainage for unchanneled surface or subsurface waters in or on the upper lots, nor to refrain from the improvement of his lots because that change will interfere with or prevent the natural flowage of such waters from the upper lots upon or into such lower lots, to the end that the upper lots may be drained.—3 Farnam, § 935, pp. 2712, 2713. Hence counts 1, 2, 3 (original), and 4 were wholly deficient, stating no cause of action. Amended count 3, made by the addition of averments thereto, did not cure the infirmity of original count 3. The allegation in the added averment that the waters flowed "through a well-defined channel over

and across" plaintiff's lots must, in the light of the whole count as amended, be referred to rainfall only—a character of flow that does not at all rise to the dignity of a defined, distinct stream, to which the law attaches rights and rules not applicable to waters caused by rainfall.

In counts 5 and 6, the effect of the changes, from natural conditions, wrought by the walling-in of the spring area and of the raising of the water level by impounding the waters thus coming up from the springs, was, it is alleged, to interfere with the flow or outlet of "subterranean waters or streams," or with the flow or outlet of "streams or seepage," from plaintiff's more elevated (under natural conditions) lots. The alternatives averred (quoted) are obviously of relatively different conceptions. The strength of the counts in this particular is commensurate only with the weaker of them.—*Jordan v. Ala. City G. & A. Ry. Co. infra,* 60 South. 309; *Osborne v. Ala. S. & W. Co.,* 135 Ala. 571, 577, 33 South. 687. The weaker averments describe waters flowing without a distinctly defined channel— not streams. The stronger averment, viz., streams, describes water flowing in a distinctly defined channel. —*Tampa Water Co. v. Cline,* 37 Fla. 586, 20 South. 780, 33 L. R. A. 376, 53 Am. St. Rep. 262, 268, 269; *Ashley v. Wolcott,* 11 Cush. (Miss.) 192; *Chamberlain v. Hemingway,* 63 Conn. 1, 27 Atl. 239, 22 L. R. A. 45, 38 Am. St. Rep. 330, and note; Gould on Waters, § 281. The character and measurement of rights of and applicable rules of law to proprietors whose lands attinge upon or contain streams (water courses) are radically different from those relating to unchanneled surface or subsurface waters.—*Ulbricht v. Eufaula Water Co.,* 86 Ala. 587, 6 South. 78, 4 L. R. A. 572, 11 Am. St. Rep. 72; *T. C. I. & R. R. Co. v. Hamilton,* 100 Ala. 252, 14 South.

167, 46 Am. St. Rep. 48; *Southern Railway Co. v. Lewis*, 165 Ala. 555, 563, 51 South. 746, 138 Am. St. Rep. 77. Accordingly, the demurrers to these counts were properly sustained.

Recurring to the major question stated before, the opinion prevails that the creation of the lake or pool was in its complained-of consequences not a wrongful improvement of the defendant's urban property. The improvement made was and is within the exception applicable to the creation of artificial conditions in or about urban property. There could be no question of a proprietor's right to wall in one spring on his town or city lot, and thereby impound the waters thereof for his advantage or convenience. The existence of a number of springs on urban lots and their inclosure within walls and the impounding of their waters cannot make a condition so different as to alter the right from that to be enjoyed with respect to one spring. It is a matter of common knowledge, of this state, that a number of its prominent towns were laid off with reference to water supplies afforded, or to be afforded, by springs within their plotted areas. Before the time of the water system as we have it today, the necessary concern for a sufficient and certain water supply for the personal and business uses of the people naturally exerted an inflence upon the location or creation of villages and towns. The need in populous communities for such supplies exists today, as always formerly. The presence of the source of such supplies in or upon urban lots can and should be availed of. To do so is clearly, we think, natural and reasonable; and to effect this contemplated, anticipated, and authorized purpose structures may be erected to impound such waters, and to facilitate the enjoyment of the privilege nature has provided. So the construction of the pool or lake, as

before described, was not an improvement foreign to the reason and letter of the exception in favor of the creation of artificial conditions upon urban lots. The relation of the subject of this improvement, as well as its method, to the ordinary, usual needs and conveniences of urban communities, is intimate and natural; and, in so altering and facilitating nature's arrangement the contemplated, anticipated, general purpose and result must be deemed to have been conserved. Plea 2 properly invoked this principle, and was not subject to the demurrer.

The action of the court in sustaining the motion to strike certain replications cannot be considered, since the motion and ruling are not shown in the bill of exceptions.—*St. Louis & S. F. R. R. Co. v. Phillips,* 165 Ala. 512, 513, 51 South. 638. The affirmative charge was due the defendants.

The judgment is affirmed.

· Affirmed.

DOWDELL, C. J., and SAYRE and SOMERVILLE, JJ., concur.

