51 So.2d 1

## WILLIAMS v. WISE.

4 Div. 624.

Supreme Court of Alabama.

Feb. 15, 1951.

Rehearing Denied March 15, 1951.

Davies & Williams, of Birmingham, for appellant.

J. C. Fleming, of Elba, for appellee.

FOSTER, Justice.

This is a suit for damages for injuries received by appellee in stepping into a hole in a public street of Elba.

Appellant, against whom the judgment was rendered, was acting under what might be termed a subcontract for the improvement of the street in question. The original contract was between the city of Elba and Harbert and Cargile, Inc., in May 1948. It included street paving and storm sewers.

There was an informal agreement made between appellant and Harbert and Cargile, by which appellant was to do the "grading, drainage, curb and gutter, pipe work and base, and they (Harbert and Cargile) did part of the asphalt work and I (appellant) did part of it." He entered upon the per-

formance of the work, "grading, drainage, curb and gutters," which required manholes to be constructed: one of which was the hole in which appellee stepped and was injured. The work conducted by appellant progressed until in December 1948, when a heavy rainy season rendered it advisable to cease work until that was over. The cessation of work was agreed to by all interested parties to the contract. Appellant then made, out of heavy lumber, covers for the holes, which are shown to have been in accordance with good practice. A photograph of them is in evidence. At the time he was unable to get permanent metal covers which were intended to be put over the manholes. There is a detailed description of the covers and of the lumber used in making them. The evidence is without dispute that the hole in which appellee stepped in March 1949 had placed over it such a cover when the work ceased in December 1948; but such cover was not over the hole on March 3, 1949 when appellee was injured. Appellant made no inspection of the manholes in the meantime, but was out of the city during that time.

Appellant on the trial offered in evidence the contract between the city and Harbert and Cargile. Objection was made by appellee, plaintiff in the trial court. After some discussion with counsel, the court admitted it "for the purpose of showing the authority of defendant to do the construction work," which he was doing; "and the court is going to sustain any objection if it is offered for the purpose of this defendant escaping liability or shifting liability to the other party to the contract." The court stated that he acted on the "one theory" that it was to show that defendant was authorized by reason of it to engage in the construction work. That contract provided that the contractor, Harbert and Cargile, shall "maintain and finally remove all necessary barriers, danger warnings and detour signs. He shall also, at his own expense, provide suitable and sufficient red lights, torches, reflectors or other danger signals and signs, provide a sufficient number of watchmen and take all the necessary precautions for the protection of the work and safety of the public." The only writing which evidenced the subcontract (if it was that) was in the following language: "Buddy (meaning appellant as shown by the evidence) is to pay us (meaning Harbert and Cargile, as shown by the evidence) $2250.00 for the $80,378.00 job, or $800.00 for their portion (meaning grading, drainage, curb and gutters, etc.) with us to do the black top at bid price. If any additional work is added, this is to be done on same ratio." It was signed by appellant (defendant below) and by the secretary of Harbert and Cargile.

One of the serious contentions made by appellant is that when he made an adequate cover for the hole and put it over the hole and left the work temporarily, he did not owe any duty to the public to make a reasonable inspection of it from time to time to determine whether the cover was still on the hole. His theory is that if there was no negligence in respect to the covering which was made for and placed over the hole, and was there when he left the job temporarily, he fulfilled the duty of due care which he owed the public in the performance of his contract and owed no duty to maintain it against meddlers who might, without his knowledge or consent, have removed the covering and left the hole open. He is here seeking the benefit of a principle applicable when a job is finished and accepted. But that was not this situation. 40 Corpus Juris Secundum, Highways, § 262, page 310.

■■ This contention of appellant calls for consideration of several principles which have been settled in this State and apparently elsewhere. In the beginning, it may be observed, that any negligence on the part of appellant in performing the services which he was doing on the streets of the city of Elba, which proximately caused the injury to a member of the public in the exercise of due care, subjected the defendant to liability regardless of his relation to the city of Elba or to the original contractors, Harbert and Cargile, and not dependent upon a delegation of duty by them. This principle is illustrated in the case of Finnell v. Pitts, 222 Ala. 290, 132 So. 2; Norton v. Orendorff, 191 Ala. 508, 67 So.

683; Southeastern Construction Co. v. Robbins, 248 Ala. 367, 27 So.2d 705.

■■ This duty to the public to exercise due care in the performance of his contract does not arise because of any undertaking to that effect in the contract itself between appellant and the original contractors. The plaintiff is not a party to any such contract, and the obligations of the contract are with the original contractors and not the public. Whether or not the original contractors might have an action of assumpsit against appellant as a subcontractor for a breach of his contract in respect to the matter here involved would not affect a suit against him by a member of the public for negligence. It is said in the case of Mayer v. Thompson-Hutchison Bldg. Co., 104 Ala. 611, 622, 16 So. 620, 623, 28 L.R.A. 433, that "'It is not his contract that exposes him to liability to third persons, but his common-law obligation to so use that which he controls as not to injure another.' * * * 'Misfeasance may involve the omission to do something which ought to be done, as when an agent engaged in the performance of his undertaking omits to do something which it is his duty to do under the circumstances; as that when he does not exercise that degree of care which due regard for the rights of others requires.'" We have made use of that principle in Sloss-Sheffield Steel & Iron Co. v. Wilkes, 231 Ala. 511, 514, 165 So. 764, 109 A.L.R. 385.

■ We said with respect to the personal liability of an agent to one damaged by his culpable omission (and the same principle applies to a subcontractor) that it "depends upon whether due care in the performance of his duties makes it necessary for the agent to do the act which is omitted". If he omits to enter upon the performance of his duties, such omission is not a negligent performance; "but if he does enter upon the service, negligent performance may result from omitting to do what ought to be done as well as performing his duties in an improper manner." Prudential Ins. Co. v. Zeidler, 233 Ala. 328 (6), 171 So. 634, 636; Jones v. Tennessee Land Co., 234 Ala. 25(2), 173 So. 233.

The trial court determined as a matter of law, and instructed the jury, that there was a continuing responsibility on the part of the defendant to protect the public and pedestrians against any injury arising out of that contract work. The court then left it to the jury to determine whether or not the defendant was guilty of negligence in the failure to make reasonable inspections from time to time and to determine whether or not the cover was there over the hole and, if it was not there, to put it back. It is undoubtedly true that if there was a continuing duty and responsibility on the part of the defendant arising out of the construction work, it was to exercise due care to see that the manholes were constantly covered. Whether there was a negligent performance of that duty was a matter properly left to the jury.

■ We think the court was correct in holding that there was a legal duty which continued throughout the performance of the contract, but it was to exercise due care, and therefore when the work was by agreement temporarily suspended, to be resumed later, it was unfinished and continued to be under defendant's control. The court therefore was right in declaring as a legal conclusion that his duty continued during the period of suspension. The court did not instruct the jury as to what acts should be performed by the defendant during that period of suspension, and properly so, but merely expressed the conclusion as a matter of law that during that period of time there was a duty on the part of the defendant to exercise due care for the protection of the public. It is the function of the court to define the duty of defendant, when the facts are not disputed, leaving the facts to the jury if they are disputed. 45 Corpus Juris 1337, section 912; 65 C.J.S., Negligence, § 287.

■ We think the meaning of the oral charge as a whole is that the continuing duty was to exercise due care, and that in this respect the court did not commit error. In some of his expressions the trial judge does not say that the duty is continuing to use due care to protect the public, but we think the charge as a whole carries that

idea. Moreover, the exceptions were not taken to that aspect of the charge so as to suggest a further explanation. There are several charges which were requested by the defendant to be given, which assumed that during that period of suspension there was no duty on the part of the defendant owing to the public to exercise care in respect to the safety of the operations which defendant temporarily left during that period. Those charges were properly refused (charges Nos. 18, 19, 20 and 21).

The contract between the city of Elba and Harbert and Cargile, offered in evidence by appellant, seems to justify some discussion. The court limited it to show, as we have stated, that appellant was not engaged in unlawful business in doing the work, and held that it did not serve to shift liability from defendant to Harbert and Cargile for his negligence in performing his duties under his contract with Harbert and Cargile. The court also refused charge No. 5 on that theory.

We think it is material in that connection to analyze the power of a contractor to shift responsibility to the public from one party to the other. Whatever might be their contract as to who must bear the consequences of damages arising from the manner of the performance of the contract, the rights of the public are not thereby affected. As we have shown, it is only material here in explanation of the work being done. The right of a member of the public to sue one for damages for negligently causing personal injuries is wholly beside any arrangements made by the contractors with each other.

Harbert and Cargile would be answerable in damages for the negligence of appellant if appellant was acting as agent for them in the line and scope of their authority. A contractor, such as Harbert and Cargile, cannot relieve itself from liability *to the other party* to the contract (the city) by delegating to another its performance. Dixie Stage Lines v. Anderson, 222 Ala.

673, 134 So. 23; Alabama Power Co. v. Pierre, 236 Ala. 521, 183 So. 665.

But a contractor is not liable to a member of the public for the negligence of a subcontractor, except (1) that the contractor and his original contractee and his subcontractor are each liable to the public for injuries resulting directly and necessarily from the acts authorized to be done; but this does not extend to injuries which are not a necessary result of the work, but are caused by the negligent act of the subcontractor in doing the work, for then the subcontractor alone is responsible. Another exception to the general rule above stated is (2) where the law imposes on the original contractor a duty to keep the subject of the work in a safe condition (such as a city in respect to streets), the duty continues throughout its performance. This theory is fully discussed in the cases of City of Birmingham v. McCary, 84 Ala. 469, 4 So. 630; Baker v. Atlanta, B. & A. R. Co., 163 Ala. 101, 49 So. 751; Southern R. Co. v. Lewis, 165 Ala. 451, 51 So. 863.

There is no principle which makes the subcontractor's liability to the public for his negligent performance dependent upon a delegation of duty to him. His duty to the public is a creature of law, not of delegation by his contractor.

The trial court was therefore correct in holding that the contract between the city and Harbert and Cargile did not serve to shift from them any liability for injuries to the public for which the law created a just claim. But whether or not the status which the contract imposed on Harbert and Cargile in respect to the alleged negligence of appellant as a subcontractor was that of a nondelegable duty so as to make Harbert and Cargile liable for damages resulting from it, is not an issue in this cause. Therefore, we should not express an opinion in respect to it. It is sufficient to say that no injury resulted to appellant from the limitation which the court put upon the use of the contract, as we have here stated.

Appellant also contends that he was due the affirmative charge because he claims

328

that the allegations of count 3, on which the trial was had, were not proven to the extent that it alleges that a manhole "was left open and uncovered and remained open and defendant negligently failed to cover said manhole," whereas he claims that without dispute the evidence shows that he did cover said manhole and it did not remain open as of the time he suspended work, although there may be proof of the further conjunctive allegation that defendant "allowed said hole to be cut and to remain open, uncovered, etc." The theory advanced is that all allegations made in the conjunctive must be proven. The principle has its limitations. Southern R. Co. v. Lee, 167 Ala. 268, 52 So. 648; Birmingham News Co. v. Little, 226 Ala. 642, 148 So. 398; Kelly v. Tatum, 222 Ala. 655(6), 133 So. 703; Tobler v. Pioneer Mining & Mfg. Co., 166 Ala. 482, 52 So. 86.

Appellant claims that the proof shows without conflict that when he suspended the work temporarily for the rain, he covered the holes and that when he left there they were covered and, therefore, that allegation was not proven. But we observe that allegation is that in making said improvements, a manhole was left open and uncovered and remained open without specifying at what stage of the work it occurred. The other feature of the complaint is that defendant allowed said hole to be cut and remain open, uncovered and without warning. It likewise is not limited to the time when he suspended operations temporarily. They would both be proven if the hole was left open and uncovered and remained open at some time during the suspension as well as when the suspension started.

The assignments of error do not seem to merit further discussion. We have considered them and do not find reversible error.

The judgment is affirmed.

Affirmed.

LIVINGSTON, LAWSON and STAKELY, JJ., concur.