Cincinnati Insurance Companies ("CIC"), as subrogee of Sarah Fain and James Clyde Fain, Jr., appeals from a summary judgment in favor of defendant Barber Insulation, Inc. ("Barber"); the trial court's order also enforced a settlement agreement allegedly entered into by CIC and Framco. We affirm in part, reverse in part, and remand.
 I. Factual Background
This dispute arose out of a construction contract between the Fains and Dark Alexander Company, Inc. ("Dark"), dated July 26, 2001, in which Dark agreed to serve as general contractor for the construction of a "lake house" for the Fains in Equality. Subsequently, Dark subcontracted the project to various entities, including Barber and Framco. Dark hired Framco for the framing and siding work, and it entered into an oral agreement with Barber to insulate the house. By February 12, 2002, the house was completed.
On January 25, 2003, a water pipe located in a wall of the house froze, burst, and flooded the interior of the house, causing approximately $63,500 in damage. At that time, the Fains had in force a homeowner's insurance policy issued by CIC. CIC paid the Fains under the policy and sued Dark, Barber, and Framco, seeking to be subrogated to the rights of the Fains for approximately $63,500. CIC sought recovery under claims of third-party-beneficiary breach of contract and negligence. CIC eventually settled its claims against Dark. *Page 443 
Barber filed a motion for a summary judgment. Framco filed a motion alleging that CIC had agreed during a mediation session to settle its claims against Framco for $1,000 and seeking an order enforcing the alleged settlement agreement. On October 24, 2005, the trial court granted both motions. On appeal, CIC challenges that judgment as to both Barber and Framco. We first address the propriety of the summary judgment for Barber.
 II. Summary Judgment
"Our review of a summary judgment is de novo." Crutcher v.Wendy's of North Alabama, Inc., 857 So.2d 82, 85
(Ala. 2003). "Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P." Childersburg Ban-corporation, Inc. v. Alabama Dep't ofEnvtl. Mgmt., 893 So.2d 1142, 1145 (Ala. 2004). "Once the movant shows that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact."Id. "In order to defeat a properly supported motion for a summary judgment, the nonmoving party must present substantial evidence that creates a genuine issue of material fact."George v. Raine, 895 So.2d 258, 261 (Ala. 2004). Additionally, "the existence of a duty is a strictly legal question to be determined by the court." Taylor v.Smith, 892 So.2d 887, 891 (Ala. 2004). CIC contends that it met its burden as the nonmovant and is entitled to a jury trial on the claims of third-party beneficiary and negligence, by which it seeks to recover from Barber as the Fains' subrogee.
 A. Third-Party Beneficiary
According to CIC, the trial court erroneously concluded that the Fains, as owners of the house, were not third-party beneficiaries of the construction subcontract between Dark and Barber, and, consequently, that CIC could not recover from Barber, as the Fains' subrogee, for breach of that contract. Based on the research the parties have presented to this Court, there appears to be a paucity of Alabama caselaw on this precise point. However, it is well established in this State that "[a] party claiming to be a third-party beneficiary, `must establish that the contracting parties intended, upon execution of the contract, to bestow a direct, as opposed to an incidental, benefit upon the third party.'" Ex parte Stamey, 776 So.2d 85, 92 (Ala. 2000) (quoting Weathers Auto Glass, Inc. v. Alfa Mut. Ins.Co., 619 So.2d 1328, 1329 (Ala. 1993) (emphasis added)).
Moreover, it is generally recognized that in the construction-contract context, the owner of the building being constructed is typically regarded as merely anincidental beneficiary of the contract between the general contractor and its subcontractor, and, therefore, has no enforceable rights under a subcontract. See, e.g.,Restatement (Second) of Contracts § 302 comment e, illustration 19 (1981)("A contracts to erect a building for C. B then contracts with A to supply lumber needed for the building. C is an incidental beneficiary of B's promise, and B is an incidental beneficiary of C's promise to pay A for the building."); 9 Arthur L. Corbin, Corbin on Contracts
§ 779D (1951). The operation and rationale of this principle were succinctly explained by Professor Corbin in his treatise on contracts:
 "Where A owes money to a creditor C, or to several creditors, and B promises A to supply him with the money necessary to pay such debts, no creditor can maintain suit against B on this promise. The same is true in any ease where A [the general contractor] is under a contractual duty to C [the owner] *Page 444 
the performance of which requires labor or materials, and B [the subcontractor] promises A to supply to him such labor or material; C has no action against B on this promise. In such cases the performance promised by B does not in itself discharge A's duty to C or in any other way affect the legal relations of C. It may, indeed, tend toward C's getting what A owes him, since it supplies A with the money or material that will enable A to perform, but such a result requires the intervening voluntary action of A. B's performance may take place in full without C's ever getting any performance by A or receiving any benefit whatever. In such cases, therefore, C is called an `incidental' beneficiary and is held to have no right. . . .
 "The foregoing is applicable to most cases of contracts between a principal building contractor and subcontractors. Such contracts are made to enable the principal contractor to perform; and their performance by the subcontractor does not in itself discharge the principal contractor's duty to the owner with whom he has contracted. The installation of plumbing fixtures or the construction of cement floors by a subcontractor is not a discharge of the principal contractor's duty to the owner to deliver a finished building containing those items; and if after their installation the undelivered building is destroyed by fire, the principal contractor must replace them for the owner, even though he must pay the subcontractor in full and has no right that the latter shall replace them. It seems, therefore, that the owner has no right against the subcontractor, in the absence of clear words to the contrary. The owner is neither a creditor beneficiary nor a donee beneficiary; the benefit that he receives from performance must be regarded as merely incidental."
Corbin, § 779D, at 38-41 (emphasis added; footnotes omitted). See also Outlaw v. Airtech Air Conditioning Heating, Inc., 412 F.3d 156, 164 (C.A.D.C.2005) (applying "the traditional contract law rule that, absent any indication to the contrary in an agreement, property owners are not intended or third-party beneficiaries of contracts between contractors and subcontractors"); Pierce Assocs., Inc. v.Nemours Found., 865 F.2d 530 (3d Cir.1989); Cox v.Curnutt, 271 P.2d 342 (Okla. 1954).
Of course, "[i]t would be possible for [the general contractor] to make his contract with [a subcontractor] in such terms as to show that [the general contractor] was making it for [the owner's] benefit and intended [the owner] to have an enforceable right." Corbin, supra, § 779D, at 40 (emphasis added). Indeed, in Vesta Fire Insurance Corp. v.Milam Co. Construction, Inc., 901 So.2d 84 (Ala. 2004) — on which CIC relies — this Court reversed a summary judgment for Landmark Electric Company, Inc. ("Landmark"), a subcontractor for the construction of a building owned by A M Bessemer, LLC ("A M"), and occupied by Hollywood Entertainment Corporation ("Hollywood"), when the building was destroyed by fire on July 24, 1998. That dispute involved claims by Vesta Fire Insurance Corporation ("Vesta") and Wausau Insurance Company ("Wausau"), subrogees of A M and Hollywood, respectively, alleging that the fire had resulted from the culpable conduct of, among others, Landmark. Id. at 87-88. This Court held that there were genuine issues of fact as to whether Vesta and Wausau were third-party beneficiaries of a subcontract between Landmark and Milam Company Construction, Inc., the general contractor.Id. at 103-04. *Page 445 
It did so, however, on the basis of paragraph 4.5.1 of the subcontract, which stated:
 "`The Subcontractor warrants to the Owner, Architect, and Contractor that materials and equipment furnished under this Subcontract will be of good quality and new unless otherwise required or permitted by the Subcontract Documents, that the work of this Subcontract will be free from defects not inherent in the quality required or permitted, and that the work will conform with the requirements of the Subcontract documents. Work not conforming to these requirements, including substitutions not properly approved and authorized, may be considered defective. The Subcontractor's warranty excludes remedy for damage or defect caused by abuse, modifications not executed by the Subcontractor, improper or insufficient maintenance, improper operation, or normal wear and tear under normal usage. This warranty shall be in addition to and not in limitation of any other warranty or remedy required by law or by the Subcontract Documents.`"
901 So.2d at 103 (emphasis added). In other words, the subcontract purported to extend an express warranty to the owner, Vesta's subrogor. The holding in Vesta, therefore, gave effect to clearly expressed language in the subcontract.
This case is distinguishable from Vesta. Vesta
involved a written contract with a clear provisionextending protection to third parties; this case involves an oral agreement evidencing no intent to benefit directly third parties. In that connection, CIC argues:
 "CIC contends that the Fains are intended and direct beneficiaries of the contract between Dark . . . and Barber because the contract involved work to be performed on the Fains' residence. It is undisputed that the Fains contracted with Dark . . . to construct a residence and that the Fains intended to occupy the residence. It is also undisputed that Dark . . . entered into an `oral agreement' with Barber to install insulation at the Fains' residence. Further, it is undisputed that the Fains owned the land upon which the residence was to be constructed and that the Fains did not intend to transfer ownership of the residence upon completion. Accordingly, the construction of a residence for occupation by the Fains was the sole reason the Fains entered into the contract with Dark."
CIC's brief, at 43 (citations to the record omitted; emphasis deleted).
These facts are legally insufficient to give rise to a cause of action based on a third-party-beneficiary theory. That is so, because the facts here evidence nothing more than thetypical construction subcontract, which does not recognize rights in third parties. In this context, the property owner benefits only indirectly andincidentally from the performance of the subcontract. CIC has presented no facts that would except this case from the general rule that the owner of the building is an incidental beneficiary of the contract between the general contractor and its subcontractor. For these reasons, the trial court correctly concluded that the Fains were not third-party beneficiaries of the subcontract between Dark and Barber, and, consequently, that CIC could not recover from Barber for breach of that contract as the Fains' subrogee.
 B. Negligence
CIC next contends that the trial court erred in holding that Barber was not liable under CIC's negligence claim. Its theory against Barber is that the water pipe in the Fains' home froze and burst because Barber had improperly installed *Page 446 
insulation in the wall surrounding the pipe. CIC argues that Barber "had a duty to the Fains to install the insulation properly," and that "the Fains relied on the contract between [Dark] and Barber." CIC's brief, at 50. According to CIC, "a plaintiff may argue that another party owes a duty under a contract upon which the plaintiff reasonably relied."Id. at 49-50 (emphasis added). For this proposition, it cites Berkel Co. Contractors, Inc. v. ProvidenceHospital, 454 So.2d 496 (Ala. 1984), and McGaha v.Steadman, 410 So.2d 420 (Ala.Civ.App. 1981). However, both cases are distinguishable.
For example, Providence Hospital involved an action by Berkel and Company Contractors, Inc. ("Berkel"), a construction subcontractor, against a design professional, with which Berkel was not in contractual privity. More specifically, Berkel sued Providence Hospital ("the hospital") and Gill, Korff Associate, Architects and Engineer, P.C., the architect of a project to construct an addition to the hospital.454 So.2d at 498.[1] Berkel's contract with the general contractor required Berkel "to install piles for the foundation of the addition,"id., and the piles were installed "at the direction of the architect." 454 So.2d at 500. In particular, "the admixtures used in the pile grout mix had to possess" certain qualities consistent with the architect's specifications, and "had to be approved by the architect." 454 So.2d at 499. The grout mix required by the specifications was "referred to as Underwood grout." Id. The project encountered difficulty when piles installed with Underwood grout failed "load tests."454 So.2d at 499-500. Eventually, after the installation of at least 87 piles, the use of Underwood grout had to be abandoned in favor of another type of grout. 454 So.2d at 500.
In its subsequent action against the hospital and the architect, Berkel sought compensation for "what it had expended because of the unaccepted Underwood piles." 454 So.2d at 500. Berkel's claims were based on allegations of negligence, not breach of contract. 454 So.2d at 502 n. 4. Specifically, it alleged that the architect "breached [its] duty of care in directing Berkel's installation of the . . . piles."454 So.2d at 501.
This Court reversed a summary judgment for the hospital. In so doing, it stated that "Alabama courts have rejected the absence of privity of contract as a defense to a negligence action." 454 So.2d at 501. The Court explained:
 "`Our cases hold that, where the charge of negligence is based upon breach of duty arising out of a contractual relationship, no cause of action arises in favor of one not in privity to the contract. However, there are exceptions, such as where there is an invasion of a duty independent or concurrent with the contract. Weston v. National Mfrs. Stores Corp., 253 Ala. 503, 45 So.2d 459 (1950).
 "`Stated alternatively, defendant's duty may arise from a social relationship as well as from a contractual relationship. Williams v. Jackson Co., Ala. Civ. App., 359 So.2d 798, Cert. denied, 359 So.2d 801 (Ala. 1978).
 "`Although plaintiff may be barred from recovering from defendant as a third party beneficiary to defendant's contract with another, plaintiff may nevertheless recover in negligence for defendant's breach of duty where defendant negligently performs his contract with knowledge that others are relying *Page 447 
on proper performance and the resulting harm is reasonably foreseeable.'"
 Providence Hospital, 454 So.2d at 501
(quoting Federal Mogul Corp. v. Universal Constr. Co., 376 So.2d 716, 721
(Ala.Civ.App. 1979) (emphasis added)).
 The Court then set out a number of factors to be considered "[i]n deciding whether to impose a duty in a construction context." 454 So.2d at 502-03. Those factors include:
 "`"(1) [T]he extent to which the transaction was intended to affect the other person; (2) the foreseeability of harm to him; (3) the degree of certainty that he suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury; (5) the moral blame attached to such conduct; and (6) the policy of preventing future harm."'"
 454 So.2d at 503 (quoting Howe v. Bishop, 446 So.2d 11, 15 (Ala. 1984) (Torbert, C.J., concurring in the result), quoting in turn United Leasing Corp. v. Miller, 45 N.C.App. 400, 406-07, 263 S.E.2d 313, 318 (1980)).
 Applying these factors, the Court held that the hospital and the architect, as the agent of the hospital, "owe[d] Berkel a duty to act reasonably in directing and approving [the] pile construction work." 454 So.2d at 503 (emphasis added). The Court stated:
 "The transaction was intended to affect Berkel, and it was foreseeable that it would. The alleged harm is certain and directly connected to Providence's conduct. Given the business relationship and lack of personal injury, the question of moral blame is not relevant in this case. The final factor, the policy of preventing future harm, also supports the finding of duty. Providence could have averted the alleged loss either by not acting or by acting reasonably. This Court will impose liability on Providence to require it to act responsibly.
 "This argument for a legal duty is especially compelling because Providence and its architect had the power through liquidated damages and other means to force Berkel to do as Providence wished. The court in United States v. Rogers Rogers, 161 F.Supp. 132, 136
(S.D.Cal.1958), explained the responsibilities arising from unequal positions in the context of contractor and architect:
 "`Altogether too much control over the contractor necessarily rests in the hands of the supervising architect for him not to be placed under a duty imposed by law to perform without negligence his functions as they affect the contractor. The power of the architect to stop the work alone is tantamount to a power of economic life or death over the contractor. It is only just that such authority, exercised in such a relationship, carry commensurate legal responsibility.'"
454 So.2d at 503 (emphasis added).
Prominent in the Court's analysis was the control the architect exercised over the subcontractor's work. Berkel's owncontractual performance depended on the care exercised by the architect; that is, Berkel was relying on the architect, as the hospital's agent, to exercise due care in "directing the pile work." 454 So.2d at 503.
The element of reliance and the nature of the defendant are the features that most clearly distinguish ProvidenceHospital from this case. Providence Hospital
simply represents the widely recognized rule that architects and similar design professionals may be liable in tort to persons with whom they are not in privity, when it is foreseeable that such persons would detrimentally rely on the professional's representations *Page 448 
or performance. See Martha Coleman, Liability of DesignProfessionals for Negligent Design and Project Management, 33 Tort Ins. L.J. 923 (1998). See also DonnellyConstr. Co. v. Oberg/Hunt/Gilleland, 139 Ariz. 184,677 P.2d 1292 (1984) (citing cases); A.R. Mayer, Inc. v.Graham, 285 So.2d 397 (Fla. 1973); Jim's ExcavatingServ., Inc. v. HKM Assocs., 265 Mont. 494, 878 P.2d 248
(1994); Reliance Ins. Co. v. Morris Assocs., P.C., 200 A.D.2d 728, 607 N.Y.S.2d 106 (1994); Restatement (Second)of Torts § 552 (1977).
Detrimental reliance was the cornerstone of the holding inMcGaha v. Steadman, supra, the other case cited by CIC. That case involved the alleged negligent failure of Jerry McGaha, president of Jerry McGaha's Boat House ("the Boat House"), to maintain hospitalization insurance on James Steadman, a Boat House employee. 410 So.2d at 421. Following a bench trial, the court awarded Steadman $8,112.53 on his claim against McGaha.
On appeal, McGaha contended that the trial court erred in failing "to discern the distinction between an action excontractu and one ex delicto." 410 So.2d at 421. The Court of Civil Appeals rejected that contention and affirmed the judgment, stating that "the trial court had sufficient grounds [under either of two theories] on which to find tort liability on the part of McGaha irrespective of Steadman's employment agreement" with the Boat House. 410 So.2d at 421.
In connection with the first theory, the court explained:
 "The trial court could have determined from the evidence that McGaha volunteered to act, though under no duty to do so, and therefore was required to act with due care. Dailey v. City of Birmingham, 378 So.2d 728 (Ala. 1979); Herston v. Whitesell, 374 So.2d 267 (Ala. 1979). His negligent failure to pay the insurance premium was the proximate cause of Steadman's damages. This theory is especially applicable here since Steadman apparently told McGaha that if the insurance was not going to be kept current, then he would get insurance elsewhere. Even then, McGaha assured Steadman that he would pay the premium, and Steadman detrimentally relied on those assurances."
410 So.2d at 421 (emphasis added).
The second theory of tort liability involved McGaha's position at the Boat House, which required him to "pay the bills, i.e., to see that the hospitalization insurance was kept in force." 410 So.2d at 421. In that connection, the court stated:
 "`[O]ne who undertakes to perform a contract may . . . owe a duty to others not privy to the contract to perform his obligation under the contract without negligent injury to such others. Such duty may arise from the foreseeability that such others may be injured by negligent performance, or duty may arise from the knowledge that others are relying upon a proper performance.' . . .
 ". . . .
 "Under this theory there was evidence that Steadman relied on McGaha to carry out his responsibilities as president of McGaha Enterprises. That Steadman could suffer damages from the lack of hospitalization insurance was reasonably foreseeable by McGaha."
410 So.2d at 421-22 (quoting Williams v. The JacksonCo., 359 So.2d 798, 801 (Ala.Civ.App. 1978) (emphasis added)).
CIC's contention that the Fains relied on the contract between Dark and Barber falls far short of the particularized rehance of the plaintiffs upon the architect and McGaha in Providence Hospital and *Page 449 McGaha, respectively. Indeed, Mr. Fain testified by deposition that he had "never heard" of Barber prior to this litigation. In fact, it was Dark — not the Fains — that relied on Barber. The Fains relied on Dark, not Barber. The absence of reliance and consideration of the six factors set forth in Providence Hospital militate against imposing liability on Barber.
Other cases cited by CIC, in particular, Dailey v. City ofBirmingham, 378 So.2d 728 (Ala. 1979), and Williams v.Wise, 255 Ala. 322, 51 So.2d 1 (1951), are even less apposite than Providence Hospital. Each of those cases involved a personal injury as the result of a dangerous condition created by the defendant, which condition was still under the control of the defendant at the time of the accident. Those cases contain only general propositions of law not specifically applicable to the facts of this case. "[A]n appellant's citations to general propositions of law not specifically applicable to the issues presented by the appeal do not meet the requirements of Rule 28, Ala. R.App. P."BankAmerica Housing Servs. v. Lee, 833 So.2d 609, 621
(Ala. 2002) (summarizing Connerly v. Connerly,523 So.2d 461, 462 (Ala.Civ.App. 1988)). "Authority supporting only `general propositions of law' does not constitute a sufficient argument for reversal," Beachcroft Props., LLP v. City ofAlabaster, 901 So.2d 703, 708 (Ala. 2004) (quotingGeisenhoff v. Geisenhoff, 693 So.2d 489, 491
(Ala.Civ.App. 1997)). See also Dykes v. Lane Trucking,Inc., 652 So.2d 248, 251 (Ala. 1994) ("it is not the function of this Court to do a party's legal research or to make . . . legal arguments for a party").
In short, CIC has cited no persuasive authority for imposing on Barber a duty to the Fains arising out of its insulation subcontract with Dark. Thus, the trial court did not err in entering a summary judgment for Barber.
 III. Alleged Settlement Agreement
CIC contends that the trial court erred in concluding that a valid and enforceable settlement agreement existed between it and Framco. and, consequently, in enforcing the alleged agreement. We agree.
"An attorney has authority to bind his client, in any action or proceeding, by any agreement in relation to such case, madein uniting, or by an entry to be made on the minutes ofthe court." Ala. Code 1975, § 34-3-21 (emphasis added). This section "`govern[s] settlement agreements reached while the case is still at the trial level,'" and Ala. R.App. P. 47 "`govern[s] settlement agreements reached while the matter is on appeal.'" Ex parte Sims, 627 So.2d 380, 382
(Ala. 1993) (quoting Spurlock v. Pioneer Fin. Servs.,Inc., 808 F.Supp. 782, 783 (M.D.Ala.1992)). In the absence of compliance with this statute, the alleged agreement is unenforceable as a matter of law. Phillips v. Knight,559 So.2d 564, 569 (Ala. 1990).
Framco and CIC dispute whether they, in fact, reached a settlement agreement. However, "Framco admits that the technical requirements for enforcement have not occurred and (1) the agreement was not reduced to writing and (2) the agreement was not made on the minutes of the trial court." Framco's brief, at 3 (emphasis added). Because the agreement, if one existed, does not comply with § 34-3-21, the trial court erred in enforcing it. The judgment, to that extent, is reversed, and the cause is remanded.
 IV. Summary
In summary, the trial court did not err in entering a summary judgment for Barber. The summary judgment is, therefore, affirmed. The court did err, however, in *Page 450 
enforcing the settlement agreement allegedly entered into by CIC and Framco. That aspect of the judgment is reversed, and the cause is remanded for further proceedings.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
NABERS, C.J., and LYONS, SMITH, and PARKER, JJ., concur.
[1] The claims against the hospital were based on the theory that the architect was the agenst the hospital. 454 So.2d at 501
and 501 n. 3.