Rel: June 14, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2023-2024

_____

### SC-2023-0524

_____

### Joe Iskra and Rani Singh

### v.

### Bear Roofing, LLC

### Appeal from Jefferson Circuit Court
### (CV-15-902590)

STEWART, Justice.

Joe Iskra and Rani Singh ("the Iskras") appeal from a judgment of

the Jefferson Circuit Court ("the trial court") entered in favor of Bear

Roofing, LLC ("Bear"). The Iskras claim that they were intended third-party beneficiaries of a contract between Bear and Kenneth Vinoski, that Bear breached the contract and an express warranty associated therewith, and that Bear negligently performed the contracted-for repairs to a house the Iskras were purchasing from Vinoski. The trial court entered a summary judgment against the Iskras and in favor of Bear on each of the Iskras' claims. We reverse and remand.

<u>Facts and Procedural History</u>

The Iskras entered into a contract with Vinoski to purchase a house, and they hired A.Q.I. Home Inspection Services, Inc. ("AQI"), to inspect the house for any deficiencies before closing on the sale of the house. AQI discovered evidence of water intrusion in the attic near the front of the house, documented that discovery in an inspection report, and submitted the inspection report to the Iskras. The Iskras requested that Vinoski repair the source of the leak before closing on the sale of the house, and Vinoski reached out to Bear for consultation. According to Dustin Stanfield, Bear's corporate representative and president, Bear was made aware that Vinoski was selling the house and that the source

of the leak needed to be fixed because it was in a written inspection report, though Bear never saw the inspection report.

It is undisputed that Vinoski entered into a contract with Bear to repair the source of the leak.[1] According to Stanfield, Bear keeps a written contract for every job performed. However, none of the parties have provided the contract for the work to be performed. The only evidence memorializing the agreement between Bear and Vinoski is the receipt for the work performed by Bear, which speaks to applying sealants and references a "Bear Tough" warranty that, Bear's website states, "[covers the new homeowners] if [Vinoski] sells [his] house during the warranty period." The receipt does not mention the Iskras, the inspection report, or that Vinoski was selling the house. Stanfield explained in an affidavit that the "Bear Tough" warranty does not automatically transfer but, instead, will transfer through a process that "requires the home-owner to ask us to transfer the warranty, and also requires the home-owner to give us the name and contact information of the intended buyer." Bear's warranty, as described on its website, does

---

[1]It is disputed, however, whether Bear repaired what it determined needed to be fixed or whether Vinoski requested specific repairs.

3

not mention that transfer process. Neither the Iskras nor Vinoski ever requested that the warranty be transferred.

The Iskras allege that, a few weeks after they closed on the sale of the house and moved in, they observed a leak in the same location where the inspection report had noted evidence of water intrusion. The Iskras spoke with a representative from Bear to request a quote for repairs, but when they mentioned the warranty to the representative, the representative responded that there was no warranty. The Iskras hired a different roofing company to repair the leak and associated damage. The Iskras filed a complaint in the trial court against Bear, among others, alleging that Bear had breached the contract, and the associated express warranty, that Bear had entered into with Vinoski and that Bear had negligently performed the contracted-for repairs. Bear moved for a summary judgment as to each of the Iskras' claims, arguing that Bear had never intended to benefit the Iskras, that the warranty had never been transferred to the Iskras, and that Bear had owed no duty to the Iskras, as prospective purchasers of Vinoski's house.

On February 7, 2018, the trial court entered a summary judgment in favor of Bear. In its judgment, the trial court reasoned:

4

"Even though the Defendant Bear Roofing contends that summary judgment is due to be granted because the [Iskras] have not proven that a genuine issue of material fact exists on [their] claims for negligence/wantonness and breach of warranty ..., the Court will first turn its attention to the issue of breach of contract. The [Iskras] contend[] that they are Third Party Beneficiaries to the contract between the Defendants Ken Vinoski and Bear Roofing.

"A non-signatory party claiming that he is an intended third-party beneficiary to a contract between other signatory parties must prove (i) that both parties intended, upon execution of the contract, to bestow a DIRECT benefit upon the third-party, and (ii) that the intention on the part of both contracting parties was present at the moment that the contract was formed. Ex parte Stamey, 776 So. 2d 85, 92 (Ala. 2000); Weathers Auto Glass, Inc. v Alfa, 619 So. 2d 1328, 1329 (Ala. 1993); Cooks Pest Control v. Boykin, 807 So. 2d 524 (Ala. 2001). The Defendant Bear Roofing denies that it had any intention of bestowing a benefit upon any person other than Ken Vinoski.

"According to law the burden shifts to the [Iskras] to provide substantial evidence to the contrary, i.e., evidence that Defendant Bear actually did intend to bestow a direct benefit to the [Iskras] at the moment defendant Bear Roofing contracted with Ken Vinoski. The [Iskras] have not produced any such evidence.

"Further, Alabama law states that when analyzing the intent of the contracting parties, the courts should examine only the language of the contract in question. Id.

"It is undisputed that the contract between Vinoski and Bear does not mention or refer to the [Iskras]. Indeed, the invoice/receipt, which represents the only contract between Bear and Vinoski, is silent as to the Iskras. Moreover, Mr. Vinoski states that he did not reveal to Bear Roofing the

5

identity of the party purchasing his home but only instructed [Bear] to do 'what was necessary to fix it.' The statements made by Vinoski do not convey that a buyer had signed a purchase agreement. There is no evidence that Vinoski referenced the Iskras, or that he mentioned that the repairs were a contingency to his contract to sell to the Iskras. No evidence was presented to show that Bear Roofing intended for anyone to receive the benefit of [its] work performance other than Vinoski.

"Because Bear Roofing and Ken Vinoski did not intend for the Iskras to be a third party beneficiary to the contract, the Court need not reach any conclusions on negligence/wantonness or breach of warranty."[2]

(Capitalization in original.) This appeal follows.[3]

## Standard of Review

The Iskras appeal from a summary judgment, which we review de novo, applying the same standard applied by the trial court. We must first determine whether, when viewing the evidence in the light most favorable to the Iskras, Bear made a prima facie showing that there existed no genuine issue of material fact and that it was entitled to a judgment as a matter of law. See Rule 56(c), Ala. R. Civ. P.; Blue Cross

---

[2]The claims against the final defendant were dismissed by an order entered on June 13, 2023, at which time the February 7, 2018, summary judgment in favor of Bear became "final" and appealable.

[3]Bear has not favored this Court with an appellee's brief.

6

& Blue Shield of Alabama v. Hodurski, 899 So. 2d 949, 952-53 (Ala. 2004).

If Bear met that burden, then we must determine whether the Iskras

produced "substantial evidence" demonstrating the existence of a

genuine issue of material fact. Dow v. Alabama Democratic Party, 897

So. 2d 1035, 1038-39 (Ala. 2004).

Analysis

The Iskras first argue that the trial court erred in determining that

they were not intended third-party beneficiaries to the contract between

Bear and Vinoski because, they contend, Bear knew that Vinoski was

selling the house when it performed the repairs.

The long-standing rule in Alabama is that

> "'"one who seeks recovery as a third-party beneficiary of a
> contract must establish that the contract was intended for his
> direct, as opposed to his incidental, benefit." Mills v. Welk,
> 470 So. 2d 1226, 1228 (Ala. 1985). "To recover under a third-
> party beneficiary theory, the complainant must show: 1) that
> the contracting parties intended, at the time the contract was
> created, to bestow a direct benefit upon a third party; 2) that
> the complainant was the intended beneficiary of the contract;
> and 3) that the contract was breached." Sheetz, Aiken &
> Aiken, Inc. v. Spann, Hall, Ritchie, Inc., 512 So. 2d 99, 101-02
> (Ala. 1987).'"

H.R.H. Metals, Inc. v. Miller, 833 So. 2d 18, 24 (Ala. 2002) (quoting

McGowan v. Chrysler Corp., 631 So. 2d 842, 848 (Ala. 1993)). When

contemplating the contracting parties' intent, this Court has explained

that the

> "'key inquiry is whether the claimant was intended to be benefited by the contract provision in question. Further, "[i]t is not essential to the creation of a right in an intended beneficiary that he be identified when a contract containing the promise is made." Restatement (Second) of Contracts § 308. Finally, when determining whether the parties to the contract intended to bestow a benefit on a third party, a court may look beyond the contract to the circumstances surrounding its formation.'"

Rumford v. Valley Pest Control, Inc., 629 So. 2d 623, 631 (Ala. 1993)

(quoting Beverly v. Macy, 702 F.2d 931, 940 (11th Cir. 1983)).

In Rumford, this Court addressed a purchaser's rights as a third

party when the sellers of a house hired another party to perform a service

required by the purchaser as a condition of the sale. The sellers in

Rumford, the Rawlinses, hired Valley Pest Control, Inc., to conduct an

inspection of the house for termites and to produce a letter stating that

the house was free from termite infestation. When holding that the

Rumfords, the purchasers, were intended third-party beneficiaries of the

contract between Valley and the Rawlinses, this Court explained:

> "[T]he contract requiring Valley to produce a letter representing current conditions of the house arose only pursuant to the contract executed by the Rumfords and the Rawlinses for the sale of the property and, therefore, clearly

8

> contemplated an imminent sale, after which the Rawlinses would derive no benefit from termite protection. Indeed, the only party calculated to derive a direct, substantial benefit from such a contract is the prospective buyer."

629 So. 2d at 631; see also Savage v. Wright, 439 So. 2d 120, 123 (Ala. 1983) (noting that the only reasonable inference from the evidence was that the representations made by a termite inspector who had been hired in connection with the sale of a house were made with the intention or knowledge that the prospective purchaser would act on those representations); see also Ex parte Hill, 730 So. 2d 214, 217 (Ala. 1998) ("We see no reason that the rationale in Savage[ v. Wright, 439 So. 2d 120 (Ala. 1983),] should not apply to a structural inspection by a licensed contractor.").

In this case, the Iskras presented evidence, from both Vinoski and Bear, indicating that Bear had been made aware that Vinoski had requested its services to repair deficiencies noted on an inspection report prepared in connection with the intended sale of the house. Much like in Rumford, the repairs were clearly in contemplation of the sale of the house, after which Vinoski would derive no benefit from the repairs. As a result, the Iskras presented evidence showing a genuine issue of material fact regarding whether Bear intended to bestow a direct benefit

upon them, and, as a result, the trial court erred in entering a summary judgment determining, as a matter of law, that they were not intended third-party beneficiaries of the contract between Vinoski and Bear.

The Iskras also argue that the trial court erroneously entered a summary judgment in Bear's favor on their breach-of-express-warranty claim. In Bay Lines, Inc. v. Stoughton Trailers, Inc., 838 So. 2d 1013 (Ala. 2002), this Court addressed the viability of a breach-of-warranty claim asserted by an entity -- Bay Lines, Inc. -- who was not a party to the contract. Crane Co. manufactured panels to be used on trailers and sold those panels to Stoughton Trailers, Inc. Crane provided an express warranty that contained terms limiting the warranty to the original purchaser of the panels. Bay Lines ultimately purchased trailers manufactured by Stoughton that contained the panels provided by Crane. When considering whether Bay Lines could enforce the warranty, this Court looked to whether the warrantor, Crane, had "intended to protect future customers of Stoughton, such as Bay Lines, when it warranted its products to Stoughton." 838 So. 2d at 1018-1019. Because the warranty was expressly limited to the original purchaser, this Court

10

held that Crane had not intended to protect future customers such as Bay Lines and, as a result, that Bay Lines could not enforce the warranty.

In Harris Moran Seed Co. v. Phillips, 949 So. 2d 916, 925 (Ala. Civ. App. 2006), the Court of Civil Appeals addressed the viability of a breach-of-warranty claim by an individual, Edward A. Phillips, who was not a party to the contract containing the warranty. When considering whether Phillips could enforce the warranty in the contract between Harris Moran Seed Co. ("HMSC") and Clifton Seed Company ("Clifton"), the court, following Bay Lines, analyzed whether HMSC had intended to protect future customers of Clifton, such as Phillips. The court contemplated terms in the contract referencing "end users" and considered testimony indicating that HMSC had been aware that defective seeds would cause farmers, like Phillips, to suffer significant financial losses. A plurality of the court concluded that "HMSC and Clifton Seed Company, the contracting parties, not only had end users like [Phillips] in mind when they reached their agreement, but also specifically provided for those end users to be notified of HMSC's 'exclusive express warranty' that the seeds were 'true to type.'" 949 So. 2d at 924.

In this case, the Iskras have presented evidence that, when viewed in a light most favorable to them, indicates that they were covered under Bear's warranty. For instance, it is undisputed that Vinoski was provided with an invoice that referenced a "Bear Tough" warranty. There was evidence indicating that the warranty was meant to cover prospective purchasers, such as the Iskras, without being conditioned on a preclaim transfer of the warranty. Furthermore, Bear was aware that the repairs it provided and warrantied were performed to meet the conditions necessary to close an imminent sale of the house. Because the Iskras presented evidence demonstrating a genuine issue of material fact regarding whether Bear intended to protect prospective purchasers of the house, the trial court erred in entering a summary judgment in favor of Bear on the Iskras' breach-of-express-warranty claim.

Finally, the Iskras assert that the trial court erred in entering a summary judgment for Bear on their negligence claim. The trial court's stated basis for entering a summary judgment on the Iskras' negligence claim was that they were not third-party beneficiaries to Vinoski's contract with Bear. As set forth above, however, there is a genuine issue

12

of material fact precluding summary judgment on the Iskras' third-party-beneficiary status.

Moreover, this Court has explained that

"'where one party to a contract assumes a duty to another party to that contract, and it is foreseeable that injury to a third party -- not a party to the contract -- may occur upon a breach of that duty, the promisor owes that duty to all those within the foreseeable area of risk.'"

QORE, Inc. v. Bradford Bldg. Co., 25 So. 3d 1116, 1124 (Ala. 2009) (quoting Harris v. Board of Water & Sewer Comm'rs of the City of Mobile, 294 Ala. 606, 613, 320 So. 2d 624, 630 (1975)). In other words, "if the breaching party negligently performs the contract with knowledge that others are relying on proper performance and the resulting harm is reasonably foreseeable," a third party may recover on a negligence claim based on a breach of that duty even if that "third party is not in privity with the parties to [the] contract and is not a third-party beneficiary to the contract." QORE, 25 So. 3d at 1124 (citing Cincinnati Ins. Cos. v. Barber Insulation, Inc., 946 So. 2d 441, 446-47 (Ala. 2006)).

In Glasgow v. Jackson Land Surveying, LLC, 236 So. 3d 111 (Ala. Civ. App. 2017), the Court of Civil Appeals, applying the foregoing precedent from this Court, contemplated a negligence action premised on

13

a contractual obligation. Glasgow's neighbor entered into a contract with a surveyor to mark the boundary line to the neighbor's land. Glasgow, who was not a party to the contract, sued the surveyor, alleging that it had negligently performed a survey that incorrectly determined the property line between Glasgow's land and the neighbor's land. The court in Glasgow held that "Glasgow's complaint contains no allegation that he had detrimentally relied on the survey." Id. at 117. "[T]he key to liability for negligence [is] 'particularized reliance.'" Id. at 116 (quoting Cincinnati, 946 So. 2d at 448).

In this case, the Iskras, in contrast to the plaintiff in Glasgow, presented evidence showing that they had relied to their detriment on Bear's performance in repairing the leak -- they had purchased the house believing that the repair had been made. The Iskras also presented evidence showing that Bear had known that it had been hired to repair a leak noted in an inspection report prepared in contemplation of the imminent sale of the house. Accordingly, the trial court erred in entering a summary judgment in favor of Bear on the Iskras' negligence claim. See QORE, 25 So. 3d at 1124.

## Conclusion

For the reasons stated above, we reverse the trial court's summary judgment in favor of Bear and remand the cause for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

Parker, C.J., and Wise and Sellers, JJ., concur.

Cook, J., concurs in part and concurs in the result, with opinion.

COOK, Justice (concurring in part and concurring in the result).

I concur with the main opinion's conclusion that the Jefferson Circuit Court erred in determining that Joe Iskra and Rani Singh ("the Iskras") were not intended third-party beneficiaries to the contract between Bear Roofing, LLC ("Bear"), and Kenneth Vinoski. I also concur with the main opinion's conclusion that the trial court erred in entering a summary judgment in favor of Bear on the Iskras' breach-of-express-warranty claim. However, I concur in the result only as to the portion of the main opinion concluding that the trial court erred in granting Bear's motion for a summary judgment on the Iskras' negligence claim.